**Kevin Ray MYERS,
Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 1804–9003–CR–117.[1]**

Court of Appeals of Indiana,
First District.

Nov. 26, 1990.

---

2. The case to which Trobaugh is probably referring is *Brunes v. State* (1985), Ind.App., 475 N.E.2d 356.

1. This case was diverted to this office by direction of the Chief Judge.

Kelly N. Bryan, Muncie, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

BAKER, Judge.

Defendant-appellant Kevin Myers appeals his convictions for burglary, a Class B felony [2] and attempted rape, a Class A felony.[3] Myers challenges his convictions on three grounds, raising the following issues for our review.

I. Whether Judge Robert Barnet erred in determining the police obtained valid consent to search the car Myers drove.

II. Whether Judge Barnet erred in disallowing Myers' offer of proof regarding his past sexual history with the victim.

III. Whether there was sufficient evidence to sustain the conviction for attempted rape as a Class A felony.

We affirm.

### FACTS

The facts most favorable to the verdict reveal that Myers, aged 25 at the time of the crime, broke into the home of the 60 year old victim on October 11, 1989. The victim attempted to defend herself with

---

**2.** IND.CODE 35–43–2–1.

**3.** IND.CODE 35–42–4–1; IND.CODE 35–41–5–1.

her .38 caliber pistol, but Myers took it from her and forced her onto her bed. He then removed her pants and undergarments, removed his own pants, and attempted to climb on top of her. A struggle ensued, and the victim regained possession of the weapon long enough to fire a round into Myers' right arm. Myers then took the pistol and fled.

Myers was admitted to Community North Hospital with a gunshot wound, and Indiana State Police Detective Michael Lepper was summoned to the hospital to investigate the shooting. After discussing with Myers' mother a version of the events surrounding the shooting, Detective Lepper went to the home of Myers' employer, Jerry Barnhart. At Barnhart's home, he found the car Myers' mother said Myers had been driving at the time of the shooting. The driver's door was ajar, the passenger window was missing, and there was blood on the steering wheel and gear shift lever. The car was registered to Barnhart, whom Detective Lepper could not locate, so Detective Lepper had the car towed and impounded to preserve evidence of the shooting. Detective Lepper returned to the hospital and spoke with Myers, who told Lepper the car belonged to his employer, Barnhart, and that Barnhart paid the necessary insurance premiums.

The next day, on October 12, Detective Lepper received Barnhart's written consent to search the vehicle. The search disclosed the victim's pistol under the driver's seat, a pair of blood stained gloves, and blood samples from the dried blood on the steering wheel. It was later revealed that Myers made monthly payments on the car, reimbursed Barnhart for the insurance premiums, and maintained exclusive possession and control of the car. The car, however, was registered in Barnhart's name, and he had co-signed a loan for the car.

Prior to trial, Myers moved for exclusion of the evidence discovered in the search. On the day of the trial, he made an offer of proof of his past sexual activity with the victim pursuant to the rape shield statute. The trial court denied both motions.

## DECISION

### I

■ Myers first argues the search of the car was unconstitutional because Barnhart did not have authority to give consent to the search. He bases his argument on our supreme court's holding in *Bruce v. State* (1978), 268 Ind. 180, 375 N.E.2d 1042, *cert. denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662. In *Bruce*, the court stated:

> The present view is that the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared. Common authority depends on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.*, 268 Ind. at 236, 375 N.E.2d at 1072 (quotations and citations omitted).

This language in *Bruce* quoted the then current federal view, as expounded by the United States Supreme Court in *United States v. Matlock* (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242. Since the *Bruce* decision, Indiana has continued to follow the prevailing federal norm. *See Townsend v. State* (1989), Ind., 533 N.E.2d 1215, *cert. denied*, —— U.S. ——, 110 S.Ct. 1327, 108 L.Ed.2d 502, *reh'g. denied sub nom McCollum v. Indiana* (1990), —— U.S. ——, 111 S.Ct. 9, 111 L.Ed.2d 824; *Stallings v. State* (1987), Ind., 508 N.E.2d 550. Under the *Matlock/Bruce* analysis, Barnhart could not have given valid consent to the search because he had no access to, or control over, the car.

Recently, however, the United States Supreme Court addressed a question specifically left open in *Matlock:* "whether a warrantless entry is valid when based upon

the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." *Illinois v. Rodriguez* (1990), —— U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148. In *Rodriguez*, the court held:

> Whether· the basis for such [common] authority [to consent to a search] exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably. The Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape.

*Id.,* —— U.S. at ——, 110 S.Ct. at 2800. Because our courts have in the past followed United States Supreme Court precedent in this area, *see Bruce, supra,* we will continue to do so and apply the *Rodriguez* analysis to the case at bar.

At the outset, we note that the *Rodriguez* case involved the warrantless entry and search of a residential apartment based on the consent of Rodriguez' former cohabiting girlfriend. The search at hand was of an automobile, in which the owner's or user's expectation of privacy is not as great as in a residence. *See Porter v. State* (1987), Ind.App., 512 N.E.2d 454, *trans. denied.* In his statement to Detective Lepper on the evening of October 11, Myers said the car was a company car, on which the company paid the insurance premiums. When Detective Lepper traced the car's registration, he found Barnhart was the registered owner, and this finding fit logically and reasonably with Myers' statements because Barnhart was Myers' employer. When asked to consent to a search, Barnhart never told Detective Lepper that Myers had exclusive possession and control of the car.

In such a situation, it was eminently reasonable for Detective Lepper to search the car: the facts before him included the consent of the registered owner of the car, who was the driver's employer, as well as the driver's statements that the car was a company car on which the company paid insurance premiums. The facts available to Detective Lepper at the time could not but steer him to the conclusion that he had obtained valid consent for the search. The Fourth Amendment required no more.

We caution, however, as did the Supreme Court, that reasonableness indeed means reasonableness. There is no constitutional authorization to enter a premises or a car based on a grant of consent that would not " 'warrant a man of reasonable belief' that the consenting party had authority over the" property in question. *Rodriguez, supra,* —— U.S. at ——, 110 S.Ct. at 2801 (quoting *Terry v. Ohio,* (1968), 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889).

Judge Barnet properly admitted the evidence obtained in the search of the car.

## II

On the morning of the trial, Myers tendered an offer of proof regarding his past sexual relationship with the victim, alleging he had been involved with the victim for over two years. Indiana's rape shield statute allows a defendant or the State in a sex crime prosecution to introduce evidence of the defendant's sexual history with the victim or a witness. IND. CODE 35–37–4–4(b). The offer of proof must be tendered *not less than 10 days before trial,* IND.CODE 35–37–4–4(c)(1), and the trial court must exercise its discretion to determine whether the probative value of the tendered evidence outweighs its prejudicial or inflammatory nature. IND.CODE 35–37–4–4(b).

Myers' tendered offer of proof on the morning of the trial was untimely. The statute is clear and unambiguous; the offer must be filed not less than 10 days

before trial, and the trial court properly denied Myers' motion.[1]

## III

■ Finally, Myers challenges the sufficiency of the evidence to sustain his conviction for attempted rape as a Class A felony. When faced with this type of challenge, our well known standard of review precludes us from reweighing the evidence or judging the credibility of witnesses. *Hurt v. State* (1990), Ind.App., 553 N.E.2d 1243. We consider only the evidence favorable to the verdict and all reasonable inferences flowing therefrom, and we will not disturb the verdict if it is supported by substantial evidence of probative value. *Id.*

Rape and attempted rape are Class A felonies if the defendant uses or threatens to use deadly force, is armed with a deadly weapon, or if the crime results in serious bodily injury to a person other than the defendant. IND.CODE 35–42–4–1.

Myers has presented us with no reason whatsoever to invade the province of the jury. It is uncontroverted that Myers was openly armed with a pistol during the crime; the fact that he took the pistol from the victim to prevent her from defending herself against his attack is immaterial.

## CONCLUSION
The trial court is in all things affirmed.

ROBERTSON and BUCHANAN, JJ., concur.

---

**4.** There is an exception to the 10 day rule for newly discovered evidence. IND.CODE 35–37–4–4(d). We find Myers' assertion that his offer of proof consisted of newly discovered evidence no more credible than did Judge Barnet. If Myers indeed had a two year sexual relationship with the victim, he was aware of that fact long before his trial began.