Michael F. GEIMER, Appellant,

v.

STATE of Indiana, Appellee.

No. 01S00–9112–CR–1000.

Supreme Court of Indiana.

May 27, 1992.

Donald C. Swanson, Jr., Stanley L. Campbell, Swanson & Campbell, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Michael F. Geimer was found guilty of murder by a jury in June of 1991. He was sentenced to 60 years. In this direct appeal, Geimer urges that the trial court erred in denying his motion to suppress and admitting into evidence statements he made to police when taken into custody. Geimer argues that the statements should have been suppressed as tainted evidence because both his arrest in Livingston Parrish, Louisiana, and the search of the home in which he lived with the victim (his father) were in violation of the Fourth and Fourteenth Amendments to the United States Constitution because neither a search nor an arrest warrant had been issued. Additionally, Geimer claims that the warrantless search of the scene of the crime was also violative of the Fourth and Fourteenth Amendments to the United States Constitution and, thus, justified the suppression of evidence obtained there because that search was also not conducted under the authority of a warrant. We disagree.

The defendant lived with his father, Ambrose Geimer. The relationship between the two had apparently been strained by the defendant's inability to get a job or pay his bills. In December of 1990, the Adams County Sheriff's Department received a call from Jackie Geimer, daughter-in-law of the decedent, in which she expressed concern about her father-in-law's whereabouts. She asked deputies to meet her husband, David Geimer, at the victim's house. At the scene, David Geimer stated that it was unlike his father to leave town for a period of time without notifying anyone. David was also concerned by the fact that the defendant had told various persons differing stories regarding the victim's sudden absence. The defendant had told Lawrence Greenleer, a friend of the victim, that the victim had gone to Elkhart to be with his daughter, Nancy, who had been in a traffic accident. The defendant told a neighbor, Terry Meyers, however, that the victim was going to Ohio for a few days to visit some Army buddies. The detectives and David Geimer received no response from the house. They investigated the home, the grounds, and the outbuildings and discovered that the victim's car was in the garage, the doors and windows were all locked, and there were no signs of a burglary or break-in. The deputies concluded that there was not enough evidence to justify a police break-in to the victim's home. A deputy informed David that two options existed: first, to wait and see whether he was able to contact the victim or, second, to break into the victim's home himself and to let the police in. While considering his options, David received word from his wife that she had spoken with Nancy, the victim's daughter, who, in fact, was all right and had not been in a traffic accident. At that point, David Geimer chose to break into his father's home. The deputies' search of the home revealed the victim's body hidden in the basement under several bags of water softener salt. The victim had been shot several times.

An investigation revealed that the defendant and a companion, Anthony Berry, were on their way to Louisiana to visit Berry's brother. Armed with that information, Adams County Sheriff's Deputy Stephen Mosser sent a teletype to the Livingston, Louisiana, Sheriff's Department informing them that the defendant and Berry might be in their jurisdiction. The teletype

gave a description of the two and requested Livingston authorities to apprehend them in connection with the homicide. The Livingston Sheriff's Department officers proceeded to the address provided by the Adams County police. Upon arriving at the location, police observed a vehicle parked in front of the house with an Indiana license plate. The detective spoke with a Mrs. Ganey, who lived at the address, and asked whether two men from Indiana were staying there. When she responded affirmatively, the two Louisiana officers verified the suspects identity, asked for and received permission to enter the house, entered and retrieved the two men, returned to the front porch and there placed the defendant under arrest. The defendant was advised of his *Miranda* rights at that time.

While being transported to the Livingston jail, the defendant admitted to having shot and killed his father. Upon arriving at the jail, he was re-advised of his *Miranda* rights. He indicated that he understood them and signed the advice of rights and waiver form, then gave a taped statement in which he admitted to shooting the victim with a .22 caliber rifle. Adams County authorities were informed by the Livingston police that the defendant was in custody and had confessed to the murder. They obtained an arrest warrant for the defendant and went to Livingston the next day. During conversations between the Adams County authorities and the defendant, he again admitted to having killed his father. At trial, the defendant filed a motion to suppress his statements on the basis that he was arrested in Louisiana without a warrant. He also sought to suppress evidence recovered from the victim's house because the police entered without a search warrant. Both contentions are meritless.

### Warrentless Arrest

 It is well settled that a warrantless arrest is permissible if at the time of the arrest the officer had probable cause to believe that the defendant committed a felony. Probable cause exists when, at the time of the arrest, an officer has knowledge of facts and circumstances that would

reasonably lead one to believe that the defendant committed the criminal act in question. *Ditommaso v. State* (1991), Ind., 566 N.E.2d 538, 540; *Collins v. State* (1987), Ind., 509 N.E.2d 827. The Livingston County Sheriff's Department was in possession of such information based upon the teletype they received from the Adams County Sheriff's Department. Information obtained by one officer may be relied upon by other law enforcement officials who are called upon to assist in the investigation, apprehension, and arrest of a suspect. *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604; *Heffner v. State* (1988), Ind., 530 N.E.2d 297.

Adams County police had knowledge of facts sufficient to establish probable cause justifying the defendant's arrest. Among facts known to the police were: the tension between the defendant and the victim; the differing stories told by the defendant regarding the victim's sudden absence; the fact that the victim's behavior was out of character; and the absence of evidence of break-in or robbery. This, and other evidence, provided sufficient probable cause for the defendant's arrest. Once communicated to the Livingston Parrish Sheriff's Department, this information justified the Livingston authorities in executing a valid warrantless arrest of the defendant. Because the defendant's arrest fell within the purview of the principles of the Fourth and Fourteenth Amendments, the fruit of that arrest, the defendant's confession, was admissible at trial.

### Police Entrance into Ganey Residence

 Upon arriving at the Ganey residence, where the defendant was staying, the Livingston officers spoke with Mrs. Ganey, the owner of the home. She confirmed that the men were inside. One officer asked if he could come inside and speak to them. Mrs. Ganey consented to the request. After being let in, the officer approached the defendant and Barry, who were seated at a table. He then escorted them back to the front porch. The defendant argues that the Louisiana authorities improperly entered the home without a

warrant in order to effectuate the arrest. He asserts that this lack of a warrant tainted the arrest. This is incorrect. Police were invited into the residence by the home owner. She gave valid, voluntary consent to enter the residence despite the absence of any warrant. The Livingston officers' entrance into the house for the purpose of retrieving the defendant in no way tainted the arrest.

*Warrantless Search of Victim's Home*

 Finally, the defendant argues that the search of the victim's residence without a search warrant was also in violation of the Fourth and Fourteenth Amendments of the United States Constitution. When a search is conducted without a warrant, it will be considered valid only if the State can demonstrate that it falls into one of several exceptions. *Caldwell v. State,* (1991), Ind., 583 N.E.2d 122, 124. One exception is that consent to conduct the search is given by one with authority to give such consent.

In this case, the victim's eldest son, David Geimer, consented to the search. Although David did not reside in the victim's home, David had permission to enter the house at will. This is reflected by the fact that the victim had given David a key to the premises. Even though David testified that he had since lost the key, by giving him the key to the premises, the victim had given David Geimer the type of "joint access" necessary to allow a valid consent to search.

Additionally, police presence within the victim's home was for the purpose of assisting David Geimer in determining the status of his father's health and safety. It is not necessary that law enforcement authorities be in possession of a warrant before they enter a building when the facts suggest a reasonable belief that a person within the premises is in need of aid. *Thompson v. Louisiana* (1984), 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246; *Tata v. State* (1986), Ind., 486 N.E.2d 1025. The warrantless search of the victim's residence was not improper under the circum-stances and, as a result, evidence seized therefrom was admissible.

## CONCLUSION

The motion to suppress evidence, both that obtained from search of the victim's residence and from the defendant during statements made to both the Livingston Parrish and Adams County Sheriffs, was properly denied. Consequently, the judgment entered upon the defendant's conviction is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.