Jewell K. KRISE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 16A05–9809–CR–460.

Court of Appeals of Indiana.

Oct. 29, 1999.

John H. Watson, Sunman, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Defendant Jewell K. Krise ("Krise") appeals her conviction, after a jury trial, of Possession of a Schedule II Controlled Substance Within 1,000 feet of a Public Park, a class C felony.[1] We affirm.

### Issues

Krise raises several issues on review which we consolidate and restate as follows:

---

1. IND.CODE §§ 35–48–2–6(d)(2); 35–48–4– 7(a)(2)(B).

I. Whether certain drug evidence should have been suppressed as the product of an illegal search and seizure.

II. Whether the State's alleged misconduct in questioning a police officer amounted to an evidentiary harpoon.

III. Whether the evidence is sufficient to sustain Krise's conviction of Possession of a Schedule II Controlled Substance Within 1,000 feet of a Public Park.

## Facts

The facts most favorable to the judgment show that on the morning of May 5, 1997, Indiana State Trooper Howard Ayres ("Trooper Ayres") and Decatur County Deputy Sheriff Michael Woodhull ("Officer Woodhull") went to Krise's home to serve a civil writ of body attachment which had been issued by the Shelby Superior Court. (R. 9, 313, 548, 573). The officers did not have the writ with them when they arrived at Krise's home. (R. 578, 579). Rather, they carried a cover letter, which had been sent in February 1997 from the Shelby County Sheriff to the Decatur County Sheriff. (R. 316, 578, 579). A notation on the cover letter stated, "Please return if not able to locate within 60 days." (R. 316, 579).

When the officers advised Krise of the reason for their visit, Krise became very upset and informed the officers that the writ of body attachment had already been executed and that she had consequently completed jail time as a result. (R. 550, 575). Krise permitted the officers to enter her house, where further discussion ensued regarding the validity of the writ. (R. 550). Charles Tungate ("Tungate"), Krise's housemate, thereafter entered the room and confirmed Krise's assertion that the writ had already been served. (R. 551, 575, 583). While Krise and Trooper Ayres remained inside the house, Officer Woodhull accompanied Tungate outdoors so that Tungate could check his vehicle for paperwork showing that the writ had been satisfied. (R. 551–52). At some point, Officer Woodhull contacted his dispatcher in an attempt to verify that the writ was still valid and was informed that the writ remained active. (R. 576).

While Tungate and Officer Woodhull were outside, Trooper Ayres noticed a pipe sitting on the base of a lamp in the house's living room. (R. 553). Trooper Ayres picked up the pipe when he detected the scent of burnt marijuana. (R. 9, 553, 565). When he asked Krise about the pipe, she responded that the pipe was not hers and that she did not know anything about it. (R. 554–55, 567). Tungate and Officer Woodhull eventually returned to the residence, and Trooper Ayres questioned Tungate about the pipe. (R. 555). Tungate became angry and ordered the officers to leave the residence. (R. 555). Trooper Ayres thereafter requested Tungate's consent to search the home. (R. 556, 566). In the meantime, Krise was transported by another officer to the Decatur County Jail, where the officer learned that the writ of body attachment was no longer valid. (R. 9, 560, 576).

After initially refusing to grant consent, Tungate eventually agreed to the search. (R. 9, 557–58, 565–66). Although Tungate refused to sign a consent form, Indiana State Trooper Robert Ewing ("Trooper Ewing") tape-recorded himself reading the consent form to Tungate along with Tungate's oral consent. (R. 9, 598–99). After consenting to the search, Tungate did not limit or restrict its scope in any way. (R. 599–600, 617).

While Trooper Ewing was tape-recording Tungate's consent, Decatur County Deputy Sheriff Richard Underhill ("Officer Underhill") arrived to assist in searching the residence. (R. 617, 618). While searching the bathroom, Officer Underhill noticed a purse on top of the commode. (R. 618). The officer opened the purse and found, among other things, a closed container resembling a cigarette case. (R. 621). Inside the container were two small plastic bags, one containing marijuana and the other containing a white powdery substance later identified as methamphetamine. (R. 9, 29, 271, 274, 276–77, 647).

Officer Underhill also found Krise's driver's license inside the purse. (R. 9, 620).

Krise was eventually charged with Possession of a Schedule II Controlled Substance Within 1,000 feet of a Public Park, a class C felony. (R. 8). Krise filed a pretrial motion to suppress all evidence obtained during the search of her residence. (R. 4, 43–44). The trial court denied the motion to suppress and overruled Krise's contemporaneous objection during trial. (R. 4, 79, 619). After a jury trial, Krise was convicted as charged. (R. 5, 161). This appeal ensued.

## Discussion and Decision

### I. Motion to Suppress

Krise contends that the trial court erred in denying her motion to suppress all evidence recovered during the search of her residence. According to Krise, the evidence should have been suppressed because (1) the officers' initial entry into the home to serve a stale writ of body attachment was illegal; (2) Tungate did not voluntarily consent to the search of the residence; and (3) even assuming Tungate's consent was voluntary, the scope of the consent did not extend to the contents of Krise's purse.

### A. Standard of Review

The trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of abuse of discretion. *Smoote v. State*, 708 N.E.2d 1, 3 (Ind. 1999); *Carter v. State*, 692 N.E.2d 464, 465 (Ind.Ct.App.1997). Additionally, a trial court's decision to deny a motion to suppress is reviewed as a matter of sufficiency. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind.1997). Consequently, we neither reweigh the evidence nor judge the credibility of witnesses. *Id.; Carter*, 692 N.E.2d at 465.

Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Sweeney v. State*, 704 N.E.2d 86, 107 (Ind.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 2393, —— L.Ed.2d —— (1999). In cases involving a warrantless search, the State bears the burden of proving an exception to the warrant requirement. *Id.; State v. Joe*, 693 N.E.2d 573, 575 (Ind.Ct.App.1998), *trans. denied*. A valid consent to search is one exception to the warrant requirement. *Sweeney*, 704 N.E.2d at 107; *Melton v. State*, 705 N.E.2d 564, 566 (Ind.Ct.App.1999). The theory underlying this exception is that, when an individual gives the State permission to search either his person or property, the governmental intrusion is presumably reasonable. *Melton*, 705 N.E.2d at 566.

### B. Legality of Initial Entry

Krise contends that because the writ of body attachment was facially invalid, the officers' entry into her residence was illegal, and thus all fruits of the subsequent search should have been suppressed.

The undisputed evidence shows that at the time police went to Krise's residence, the writ of body attachment the officers intended to serve had been previously executed. However, the evidence supports the inference that the officers believed the writ remained active when they arrived at Krise's home. (R. 552, 574). In response to Krise's and Tungate's assertions that the writ had been executed, Officer Woodhull contacted his dispatcher and was informed that the writ was still active. (R. 576). Police received confirmation that in fact the writ had been served only after Krise had been transported to the Decatur County Jail. (R. 576). Krise has not presented any evidence to show that police knowingly served a previously executed writ, and our examination of the record reveals none.

More importantly, the officers testified during the suppression hearing and during trial that Krise voluntarily permitted them entry into her residence. (R. 232, 280, 302, 550). Although Krise disputes those accounts and claims the officers instead "bombarded through the door," we decline to reweigh this evidence on appeal. (R. 691). As Krise invited the officers into her

home, we find no authority for her proposition that their initial entry into the residence was unlawful. *See Geimer v. State,* 591 N.E.2d 1016, 1018–19 (Ind.1992) (holding that valid, voluntary consent to enter residence did not taint subsequent arrest despite absence of any warrant); *Hunt v. State,* 550 N.E.2d 838, 842 (Ind.Ct.App. 1990) (holding that consent to entry of home by police officers was sufficient to overcome accused's Fourth Amendment claim). Accordingly, we find no error here.

### C. Validity of Consent to Search

Krise contends that Tungate's consent to search the residence was not voluntary but instead amounted to a mere submission to the supremacy of the law. In support of this contention, Krise argues that the large number of officers in the home, coupled with their intimidating tactics, left Tungate no alternative but to agree to the search.

■■■ A consent to search is valid except where it is procured by fraud, duress, fear, intimidation, or where it is merely a submission to the supremacy of the law. *State v. Farber,* 677 N.E.2d 1111, 1116 (Ind.Ct.App.1997), *trans. denied.* The voluntariness of a consent to search is determined by the totality of the circumstances, and a trial court's determination with regard to the validity of a consent is a factual matter which will not be set aside unless it is clearly erroneous. *Purdy v. State,* 708 N.E.2d 20, 23 (Ind.Ct.App.1999).

■■■ During the suppression hearing as well as during trial, Trooper Ayres and Trooper Ewing testified that although Tungate refused to sign a consent form, he orally agreed to a search of his residence after being informed of his rights. Although the record indicates that Trooper Ayres made repeated requests for Tungate's consent before Tungate reluctantly agreed, nothing shows that police intimidated Tungate or engaged in fraud to procure his consent. Nor does the record show that Tungate was under duress, motivated by fear, or gave his consent out of submission to the supremacy of the law.

Consequently, under the totality of the circumstances, we cannot conclude that it was clearly erroneous for the trial court to determine that Tungate's consent to search was voluntary.

### D. Scope of Consent to Search

Krise claims that Tungate lacked authority to consent to a warrantless search of Krise's personal effects, and thus no valid consent was ever given for the search of Krise's purse and the contents thereof. According to Krise, the officers could not have reasonably believed that Tungate possessed common control over or access to Krise's purse. In support of this contention, Krise argues that there was no testimony that any of the officers had ever seen Tungate carry, use, or otherwise have contact with the purse.

■■■ A valid consent to a search given by a third party who has common authority or a sufficient relationship to the premises to be searched is an exception which obviates the warrant requirement. *Brown v. State,* 691 N.E.2d 438, 443 (Ind. 1998); *Canaan v. State,* 683 N.E.2d 227, 231 (Ind.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998). Common authority is not to be implied from the mere property interest a third party has in the property. *Brown,* 691 N.E.2d at 443. Rather, the authority which justifies the third-party consent rests on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that each of the co-inhabitants has the right to permit the inspection in his or her own right and that the others have assumed the risk that one of their number might permit the common area to be searched. *Id.; United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The scope of a consensual search is generally defined by its expressed object. *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). When reviewing the trial court's determination regarding the

validity of a search, we consider the evidence favorable to the trial court's ruling and any uncontradicted contrary evidence. *Brown*, 691 N.E.2d at 443. The test is sufficiency of the evidence. *Id.*

█ We disagree with Krise's assertion that Tungate's consent to search did not carry with it specific consent to open her purse and examine its contents. Once police obtain a valid consent to search, they need not separately request permission to search each container. *See Jimeno*, 500 U.S. at 252, 111 S.Ct. 1801. In *Jimeno*, a police officer received a driver's consent to search the driver's automobile for narcotics. After two passengers stepped out of the vehicle, the officer noticed a folded, brown paper bag on the floorboard of the passenger side. The officer opened the bag, which contained cocaine. On appeal, the U.S. Supreme Court concluded that it was objectively reasonable for the officer to believe that the general consent to search included consent to search containers within the vehicle which might bear drugs. *Id.* at 251, 111 S.Ct. 1801. Responding to the argument that police must separately request permission to search each container in a vehicle's interior, the court reasoned as follows:

> [W]e see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness.... A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization.

*Id.* at 252, 111 S.Ct. 1801.

Likewise, in *Brown*, the defendant lived and shared a bedroom with his girlfriend, who was the owner of the home. When police arrived at the residence to investigate, the girlfriend invited them in and took them to the bedroom where the defendant was sleeping. One of the officers noticed a knife on top of a dresser and later asked the girlfriend for permission to

search the residence to obtain the knife. The girlfriend consented and also provided police with a pair of driving gloves the defendant had worn on the night of the offense. The following day, police returned to the home, and the girlfriend signed a second consent form permitting the officers to search for a ring which was located on a cosmetic table in the bedroom.

On appeal, the defendant argued that the trial court should have suppressed the items recovered from his home because police could not have reasonably believed that the girlfriend had common authority over the defendant's personal effects. Our supreme court disagreed, reasoning that "[t]he issue is not whether the girlfriend had common authority over defendant's personal effects, but rather whether the girlfriend had common authority over the home, and specifically over the bedroom." *Brown*, 691 N.E.2d at 443. Because the cosmetic table and dresser were under the common authority of both the defendant and his girlfriend, the court concluded that police were reasonable in their belief that the girlfriend possessed authority to consent to the search. *Id.* at 443–44.

█ The foregoing cases make clear that although the standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness, *Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801, the determination of reasonableness pertains to the third person's authority over the premises in question and not any particular container within a common area of such premises. *See Brown*, 691 N.E.2d at 443 (stating that the authority which justifies third-party consent rests on the mutual use, joint access, or control for most purposes so that it is reasonable to recognize that each of the co-inhabitants has the right to permit the common areas to be searched).

█ In this case, the evidence supports the conclusion that the officers' reliance on Tungate's consent to search the house was reasonable. Tungate testified at the sup-

pression hearing that he shared the residence, including the bathroom, with Krise. (R. 257). Consequently, it was reasonable for the officers to conclude that Tungate and Krise had mutual use of and joint access to the bathroom, and thus the purse and items therein were under Tungate's and Krise's common authority. *See Brown,* 691 N.E.2d at 443–44. Further, Tungate did not place any explicit limitations on the scope of the officers' search; nor did he in any way restrict the search to exclude personal items belonging to Krise. Accordingly, Tungate's voluntary consent to search the home he shared with Krise was sufficient to obviate the warrant requirement. *See Bruce v. State,* 268 Ind. 180, 375 N.E.2d 1042, 1072 (1978) (holding that because wife had joint access to the parties' bedroom, she could properly consent to the search of all areas therein, including the jewelry box over which her husband claimed exclusive access and control). In sum, the trial court did not err in denying Krise's motion to suppress the evidence recovered during the search of her residence.[2].

## II. Admissibility of Evidence

### A. Standard of Review

■ The trial court is afforded broad discretion in ruling on the admissibility of evidence. *Bacher v. State,* 686 N.E.2d 791, 795 (Ind.1997). We will not disturb its decision absent a showing of abuse of that discretion resulting in the denial of a fair trial. *Id.; Utley v. State,* 699 N.E.2d 723, 727 (Ind.Ct.App.1998), *trans. denied.*

### B. Evidentiary Harpoon

Krise contends that the State's misconduct at trial injected an evidentiary harpoon into the proceedings. During the State's direct examination of Trooper Ewing, the State questioned him as follows:

Q. During your time as a police officer have you had opportunity to be in contact with person [sic] who were under the influence of some substance ... ?

A. Yes I have.

Q. Do you have an opinion as to whether or not it appeared that [Krise] was suffering the effects of some substance?

(R. 608–09). Krise objected, claiming that the line of questioning was irrelevant, lacked a sufficient foundation, and injected an evidentiary harpoon into the proceedings. The objection was overruled, and the officer proceeded to answer that in his opinion, Krise was under the influence of drugs at the time of her arrest. (R. 610). According to Krise, the foregoing testimony amounted to an evidentiary harpoon because it was calculated to create the impermissible inference that Krise was a drug user and therefore committed the charged offense.

■ An evidentiary harpoon is the placing of inadmissible evidence before the

---

2. We acknowledge that a panel of this court recently held that a driver's consent to a warrantless search of his vehicle was not a valid consent to search a passenger's purse found in the vehicle. *See State v. Friedel,* 714 N.E.2d 1231 (Ind.Ct.App. 1999). In *Friedel,* an officer stopped a vehicle in which the defendant, her child, and two or three males were occupants. The police requested and received the driver's permission to search the vehicle for guns and drugs. During the search, officers discovered a woman's handbag which they opened, and which was found to contain methamphetamine and marijuana.

The defendant moved to suppress the evidence recovered from the search of her purse. On appeal, this court held that the driver possessed neither actual nor apparent authority to consent to a search of the defendant-

passenger's purse. In so concluding, the court noted that it was not reasonable for the officers to believe that the driver had authority to grant such consent because, among other things, the officers knew the handbag belonged to a female, the defendant was the only female in the vehicle, and "a purse is generally not an object for which two or more persons share common use or authority." 714 N.E.2d at 1240 (quoting *People v. James,* 163 Ill.2d 302, 206 Ill.Dec. 190, 645 N.E.2d 195, 203 (1994)).

We reiterate our supreme court's emphasis that the determination of reasonableness pertains to the third person's authority over the premises or vehicle in question and not any particular container within a common area of such premises or vehicle. *See Brown,* 691 N.E.2d at 443.

jury with the deliberate purpose of prejudicing the jurors against the defendant. *Shaffer v. State*, 674 N.E.2d 1, 6 (Ind.Ct. App.1996). In order to obtain reversal, the defendant must show that (1) the prosecution acted deliberately to prejudice the jury, and (2) the evidence was inadmissible. *Id.; Bufkin v. State*, 700 N.E.2d 1147, 1150 (Ind.1998).

■ Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. In this case, Krise argued during her opening statement and during her subsequent testimony that she "was never in possession of methamphetamine," that she did not know the drugs were present in her purse, and that she had nothing to do with placing them there. (R. 545). She further gave a detailed account of the events on the day in question. (R. 688–706). Evidence that Krise appeared to have been under the influence of drugs at the time of her arrest was relevant to her ability to perceive, recall, and relate the events in dispute. *See Williams v. State*, 681 N.E.2d 195, 198–99 (Ind.1997) (stating that evidence of a victim's drug use is generally irrelevant except in relation to the victim's mental capacity to recall the crime and testify about it); *McKim v. State*, 476 N.E.2d 503, 506 (Ind.1985) (stating that the extent of victim's use of drugs and alcohol on dates in question would be pertinent to, among other things, her ability to recall events on those dates); *Crocker v. State*, 563 N.E.2d 617, 623 (Ind.Ct. App.1990) (stating that witness's drug abuse would be pertinent only as to witness's ability to recall events on the dates in question, or if witness was on drugs at trial, or if drug abuse was so extensive as to impair witness's mind). Krise has not demonstrated that the officer's testimony was inadmissible or that the State elicited the testimony to improperly prejudice the jury; thus, she has not established the underlying predicates for an evidentiary harpoon.

■ Moreover, the trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission, and we review the court's ruling only for an abuse of discretion. *Flynn v. State*, 702 N.E.2d 741, 747 (Ind. Ct.App.1998), *trans. denied.* In this case, we cannot conclude that the trial court abused its discretion in permitting the admission of evidence that Krise appeared to be under the influence of a controlled substance at the time of her arrest. Consequently, we find no error here.

### III. Sufficiency

#### A. Standard of Review

Our standard of review for the sufficiency of evidence is well-settled. We neither reweigh evidence nor judge witness credibility. *Fish v. State*, 710 N.E.2d 183, 184 (Ind.1999). Rather, we examine only the evidence most favorable to the judgment, along with all reasonable inferences to be drawn therefrom. *Ellis v. State*, 707 N.E.2d 797, 800 (Ind.1999). If substantial evidence of probative value supports the conclusion of the trier of fact, we will affirm. *Id.* It is the function of the factfinder to resolve conflicts in the testimony and to determine the weight of the evidence and the credibility of the witnesses. *Jones v. State*, 701 N.E.2d 863, 867 (Ind. Ct.App.1998).

#### B. Possession Within 1,000 Feet of Public Park

Krise contends the evidence is insufficient to sustain her conviction because the State failed to demonstrate beyond a reasonable doubt that her home was located within 1,000 feet of a public park. In support of this claim, Krise argues that the State failed to prove that the park was "public" within the meaning of IND.CODE § 35–48–4–7. She further contends that the State's witness as to measurement lacked credibility because (1) he had no personal knowledge of the distance between Krise's home and the park, and (2) his testimony regarding ownership of the park relied upon hearsay.

Indiana Code section 35–41–1–23.7 defines "public park" as "any property operated by a political subdivision for park purposes." "Park purposes" include, among other things, the establishment, equipment, and operation of parks, recreation centers, and recreational facilities and programs. IND.CODE § 36–10–1–2.

 During the State's case-in-chief, Decatur County Surveyor Brian Keith ("Keith") testified that his calculations taken from a plat map indicated that Krise's home was 870 feet from a park. Keith testified that he calculated the distance from Krise's home to the park by adding the measurements of the parcel widths obtained from a plat map of the area. (R. 592, 764). Additionally, Keith testified that the park at issue was owned by the school corporation, leased to the division of parks and recreation, and operated as a public park. (R. 591). During cross-examination of Keith, Krise elicited testimony that Keith had not physically measured the distance between the two points, that he had not prepared the plat book, and that he had not conducted research into ownership of the park. The jury weighed this testimony together with the other relevant evidence, and found Keith's testimony and measurements to be reliable. We will not reweigh that evidence on appeal. Consequently, the State presented sufficient evidence from which the jury could conclude that Krise possessed a schedule II controlled substance within 1,000 feet of a public park. *See Schnitz v. State,* 650 N.E.2d 717, 722–23 (Ind.Ct.App.1995) (holding that city engineer's aerial photomap was admissible to show defendant dealt cocaine within 1,000 feet of school, notwithstanding engineer's lack of personal knowledge regarding preparation of map and failure to physically measure distance), *summarily aff'd,* 666 N.E.2d 919 (Ind.1996); *Crocker,* 563 N.E.2d at 622 (holding that measurements taken from map made by registered surveyor were sufficient to sustain conviction

for dealing marijuana within 1,000 feet of school).

Affirmed.

STATON, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

## FRIEDLANDER, Judge, dissenting

I respectfully dissent. I would reverse Krise's conviction because I believe that the trial court erred in admitting the evidence found inside her purse. In my view, Tungate's voluntary consent to search the home he shared with Krise did not obviate the warrant requirement under the circumstances presented here.

The Fourth Amendment to the United States Constitution provides protections against unreasonable searches and seizures. Unless an exception to the warrant requirement applies, a warrant is required for a search to be considered reasonable under the Fourth Amendment. *State v. Friedel,* 714 N.E.2d 1231 (Ind.Ct.App. 1999). Because it is undoubtedly reasonable for the police to conduct a search once they have been permitted to do so, a consensual search is a well-established exception to the warrant requirement. *Id.* A party may validly consent to a warrantless search even in the absence of probable cause or exigent circumstances. *Id.*

A valid consent to a search may be given by either the person whose property is to be searched or by a third party who has common authority over, or a sufficient relationship to, the premises to be searched. *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Brown v. State,* 691 N.E.2d 438 (Ind.1998). But, as our supreme court cautioned in *Brown:*

> Common authority is not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent rests on the mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that each of the co-inhabitants has the right to permit

the inspection in his or her own right and that the others have assumed the risk that one of their number might permit *the common area* to be searched. *Brown v. State*, 691 N.E.2d at 443 (citations omitted) (emphasis supplied).

The determination whether valid consent to search has been given must be judged against an objective standard, *i.e.*, whether the facts available to the officer at the moment would warrant a man of reasonable caution in the belief that the consenting party had authority over the premises. *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148.

> [I]n order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable.

*Illinois v. Rodriguez*, 497 U.S. at 185, 110 S.Ct. 2793.

In *Myers v. State*, 564 N.E.2d 287 (Ind. Ct.App.1990), this court commented on the reasonableness requirement discussed in *Rodriguez:*

> We caution, however, as did the Supreme Court, that reasonableness indeed means reasonableness. There is no constitutional authorization to enter a premises or a car based on a grant of consent that would not " 'warrant a man of reasonable belief' that the consenting party had authority over the" property in question. *Rodriguez, supra,* [497] U.S. at [188], 110 S.Ct. at 2801 (quoting *Terry v. Ohio,* (1968), 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889).

*Myers v. State*, 564 N.E.2d at 290.

In my view, it was not reasonable for the officers to believe that Tungate had

mutual use of and joint access to Krise's purse and the closed container within it in which the methamphetamine was found. A purse is a unique and special type of container in which a person possesses the highest expectation of privacy. *See Wyoming v. Houghton,* 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (Breyer, J., concurring); *United States v. Welch,* 4 F.3d 761 (9th Cir.1993); *State v. Friedel,* 714 N.E.2d 1231 (Ind.Ct.App.1999).

*State v. Friedel,* 714 N.E.2d 1231, involved the warrantless search of Friedel's purse, which was found in a van that the police had stopped because it was being operated with only one headlight. After stopping the van, the police officers learned that the male driver had a number of prior charges, but no outstanding warrants. The officers then obtained the driver's consent to search the van for drugs or guns and ordered all passengers from the van. Friedel was the only woman passenger, but the officers did not seek or receive her consent to search the purse found in the van. In determining that the warrantless search of Friedel's purse was unreasonable and unconstitutional, this court stated:

> When the officers decided to search Friedel's purse they knew that it was a woman's handbag and that Friedel was the only woman in the vehicle. They also found the purse on the floor in the back seat where Friedel had been sitting. Under these circumstances, it was unreasonable for the officers to believe that [the driver] had the authority to consent to a search of the purse especially "since a purse is generally not an object for which two or more persons share common use or authority." *People v. James,* 163 Ill.2d 302, 206 Ill.Dec. 190, 645 N.E.2d 195, 203 (1994).

*State v. Friedel,* 714 N.E.2d at 1240–41 (footnote omitted).

*Brown v. State,* 691 N.E.2d 438, upon which the majority relies, involved an issue similar to that presented here,[3] but *Brown*

3. In *Brown,* the defendant's girlfriend invited the police to enter the home she shared with

is distinguishable from this case. In *Brown,* the police did not search a container such as a wallet, purse, or luggage that belonged solely to the defendant. *See* *State v. Friedel,* 714 N.E.2d 1231.

The majority also relies upon *Bruce v. State,* 268 Ind. 180, 375 N.E.2d 1042 (1978), *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662. *Bruce,* like *Brown,* involved an issue similar to that presented in this case,[4] but I believe that *Bruce* is also distinguishable. In *Bruce,* there was ample evidence that the wife had joint access to the dresser, closet, and jewelry box found in the parties' shared bedroom, and it was therefore reasonable to conclude that Bruce assumed the risk that his wife would permit a search of their bedroom. Here, Krise's purse obviously did not belong to Tungate, and there was no evidence that Tungate had mutual use of and joint access to it.

I would reverse.

the defendant, and she took the police to a bedroom where the defendant was sleeping. While in the bedroom, the police noticed a knife on a dresser and asked the girlfriend for permission to search the residence to obtain the knife. The girlfriend also provided police with a pair of driving gloves the defendant had worn the night before. The girlfriend later gave police consent to search for a ring that was located on a cosmetic table in the bedroom she shared with the defendant. The defendant in *Brown* asserted that the trial court erred in admitting the gloves, knife, and ring, claiming that the girlfriend's consent was invalid because the police could not have reasonably believed that the girlfriend had common authority over his personal effects. Our supreme court held that the issue was not whether the defendant's girlfriend had common authority over the defendant's personal effects but, rather, whether the girlfriend had common authority over the home and specifically over the bedroom.

4. In *Bruce,* the defendant's wife consented to a search of her and the defendant's home. The wife then retrieved evidence, including the defendant's clothing, shotgun shells, and keys from the couple's bedroom, and she gave that evidence to the police. The clothing and shotgun shells were retrieved from a dresser and closet, and the keys were removed from a jewelry box. The defendant claimed that all three places, *i.e.,* the dresser, closet, and jewelry box, were used exclusively by himself. Our supreme court determined that "the trial court was amply justified in finding that Mrs. Bruce 'generally had joint access' to all areas within her own bedroom, including appellant's jewelry box." *Bruce v. State,* 375 N.E.2d at 1072.