Jason E. DOTY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 06A01–9909–CR–308.

Court of Appeals of Indiana.

June 22, 2000

Jeffrey H. Frandsen, Zionsville, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Timothy W. Beam, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Defendant Jason E. Doty ("Doty") was convicted after a trial by jury of Dealing in Cocaine within 1,000 feet of school property, a class A felony.[1] Doty now appeals his conviction.[2] We reverse and remand with instructions.

### Issues

Doty raises four issues on appeal, of which we find the following three dispositive:

I.    Whether the State established a proper chain of custody for the admission of State's Exhibit Two (cocaine) into evidence.

II.    Whether the trial court erred when it excluded testimony on the ground it was hearsay.

III.    Whether there was sufficient evidence to determine beyond a reasonable doubt that Doty dealt co-

---

1.  *See* IND.CODE § 35–48–4–1(b)(3)(B)(i).

2.  Doty was charged with both Dealing in Cocaine within 1,000 feet of school property and Possession of Cocaine within 1,000 feet of

school property. The jury returned a verdict of guilty on both charges. However, the trial court entered judgment solely on the Dealing in Cocaine charge.

caine within 1,000 feet of school property.[3]

## Facts and Procedural History

The facts most favorable to the verdict indicate that Scott Muncie ("Muncie") approached Boone County Deputy Sheriff Albert Hendrix ("Officer Hendrix") about becoming a confidential informant. Officer Hendrix gave Muncie's name to Indiana State Police Detective Troy Knorr ("Detective Knorr") as a person who could conduct controlled narcotics buys. On June 16, 1998, Officer Hendrix and Detective Knorr picked up Muncie to attempt a controlled buy of narcotics. Detective Knorr searched Muncie for contraband, supplied him with a wire transmitter, and gave Muncie purchase money. Detective Knorr then drove Muncie to Doty's house. Muncie walked up to Doty's house and knocked on the door, but no one responded. As Muncie was walking away, Doty approached the house. Muncie asked Doty if he knew where he could get some cocaine or marijuana. Doty explained that he had some cocaine, but did not have any marijuana. Doty then said, "let's take a walk." Doty and Muncie walked to a nearby trailer park. At the trailer park, Muncie purchased a quarter of an ounce of marijuana from Jay Alford ("Alford"). Doty and Muncie then walked back to Doty's house.

Upon entering Doty's house, Muncie told Doty that he wanted to purchase a gram of cocaine, but would take half of a gram if that was all Muncie had. Doty retrieved cocaine from a bedroom dresser and "eyeballed" half of a gram. Wendall Iddings ("Iddings") then knocked on Doty's front door. While Iddings waited on the couch, Muncie went back into the bedroom and paid Doty fifty dollars for the cocaine.

Muncie then left Doty's residence and walked back to meet Detective Knorr. Muncie handed the marijuana and cocaine to Detective Knorr and explained that he had purchased the cocaine from Doty, and the marijuana from Alford. Detective Knorr searched Muncie for additional contraband. Detective Knorr placed the cocaine (catalogued at trial as State's Exhibit Two) in a plastic bag bearing his name, the case number, the date, and Doty's name. Detective Knorr kept the cocaine in a locked drawer at his office until he turned the cocaine over to the Indiana State Police Lab ("Police Lab") for testing and storage. Detective Knorr checked out State's Exhibit Two on the day prior to trial. At trial, Doty objected to State's Exhibit Two being admitted into evidence, asserting that the State had failed to establish the proper chain of custody. The trial court overruled Doty's objection and admitted the cocaine into evidence. Indiana State Crime Lab chemist Donna Raskowski testified that State's Exhibit Two contained .26 grams of cocaine.

At trial, the director of Pixie Playhouse Day Care Center ("Pixie Playhouse"), Rebecca Miller ("Miller"), testified that Pixie Playhouse was a licensed childcare center. Additionally, Miller testified that Pixie Playhouse's play area was enclosed by a fence. Officer Campbell testified that the distance from the outside corner of Doty's residence to within the property line of Pixie Playhouse was 987 feet. Officer Campbell used a measuring wheel to establish this distance. Officer Campbell periodically checked the accuracy of this measuring wheel.

Iddings testified that he saw Muncie using cocaine in Doty's house and had asked if he could purchase some. Thereafter, the testimony proceeded as follows:

Q: [Counsel for Doty] What'd he [Muncie] tell you?

---

**3.** Additionally, Doty raises the issue of whether the trial court improperly instructed the jury that it was not necessary for the State to prove that he *knew* he was within 1,000 feet of school property. However, because we reverse Doty's conviction for Dealing in Cocaine as a class A felony on other grounds we need not address this issue.

[Counsel for State]: Objection to what Muncie told him. He's not a party and it's hearsay.

The Court: All right, sustained.

Q: Did someone say something about where the cocaine had been purchased?

A: Yes, they did.

Q: What was said?

[Counsel for State]: Objection again. That's just hearsay with an unidentified component.

[The Court]: Sustained.

R. 442

Doty responded that the statement was not being used to prove the truth of the matter asserted and made an offer to prove. Outside the presence of the jury, Iddings testified that Muncie had said the cocaine was for personal use. Iddings further testified that Doty stated "Jay is the ones that gots it" and Muncie nodded his head. R. 444. Doty explained to the court that he was only presenting Iddings's testimony to establish that Muncie heard the statement and to show Muncie's response. The trial court maintained its previous rulings.

Following the jury's guilty verdict, the trial court entered final judgment against Doty for Dealing in Cocaine within 1,000 feet of school property as a class A felony. The trial court sentenced Doty to forty years in the Department of Corrections, with twenty years executed and twenty years suspended on probation. This appeal followed.

## Discussion and Decision

I. *Whether the State established a proper chain of custody for the admission of State's Exhibit Two (cocaine) into evidence*

At trial, Doty objected to the admission of State's Exhibit Two stating that the State had failed to provide a sufficient chain of custody. The trial court overruled Doty's objection and admitted the evidence. On appeal, Doty argues that the admission of the cocaine was erroneous because there was no testimony from Mun-

cie that the cocaine he delivered to Detective Knorr was in the same unadulterated condition as when it came into Muncie's possession.

### A. Standard of Review— Chain of Custody

■ The admission or exclusion of evidence is within the sound discretion of the trial court. *Strangeway v. State,* 720 N.E.2d 724, 726 (Ind.Ct.App.1999). When considering the proper chain of custody for physical evidence, the State must provide reasonable assurances that an exhibit, which has passed through various hands, has remained undisturbed. *Lee v. State,* 689 N.E.2d 435, 439 (Ind.1997). It is sufficient if the State presents evidence which "'strongly suggests'" the exact whereabouts of the evidence at all times. *Id.* (quoting *Bell v. State,* 610 N.E.2d 229, 233 (Ind.1993)). When dealing with fungible items, the State has an enhanced burden of demonstrating a sufficient chain of custody. *Robinson v. State,* 724 N.E.2d 628, 640 (Ind.Ct.App.2000) *trans. denied.* A defendant who challenges the chain of custody must present evidence which does more than raise a mere possibility that the evidence could have been tampered with. *McCotry v. State,* 722 N.E.2d 1265, 1267 (Ind.Ct.App.2000) *trans. denied.* Any gaps in the chain of custody go to the weight of the evidence and not to the admissibility of the evidence. *Id.* Moreover, when the evidence is handled by public officers, there is a presumption that they used due care and that the evidence was handled with regularity. *Id.*

### B. Analysis—Chain of Custody Regarding State's Exhibit Two (Cocaine)

■ Here, the facts most favorable to the verdict reveal that on June 16, 1998, Detective Knorr searched Muncie for contraband, supplied him with a wire transmitter, and gave him purchase money to attempt a controlled narcotics purchase. Thereafter, Muncie met Doty outside of

Doty's house, and they both proceeded to walk to a nearby trailer park. At the trailer park, which was outside the range of the wire transmitter and the sight of Detective Knorr, Muncie purchased marijuana from Alford. However, both Muncie and Alford testified regarding this marijuana transaction and denied that any cocaine was exchanged. Muncie and Doty then returned to Doty's house, which was within the range of the wire transmitter. Upon entering Doty's house, Muncie told Doty that he wanted to purchase a gram of cocaine, but would take half of a gram if that was all Muncie had. Doty retrieved cocaine from a bedroom dresser and "eyeballed" half of a gram. (R. 214.) Muncie paid Doty fifty dollars for the cocaine. Muncie then walked back to meet Detective Knorr. Muncie handed the marijuana and cocaine to detective Knorr and explained that the cocaine came from Doty, and the marijuana came from Alford. Upon searching Muncie, Detective Knorr found no additional contraband.

Detective Knorr placed the cocaine in a plastic bag bearing his name, the case number, the date, and Doty's name. Detective Knorr kept the cocaine in a locked drawer at his office until he turned the cocaine over to the Police Lab for testing and storage. The chemist for the Police Lab testified to the manner in which she received the cocaine and how it was handled, stored and returned to Detective Knorr. Detective Knorr checked out State's Exhibit Two on the day prior to trial. At trial, Detective Knorr identified State's Exhibit Two as the same plastic baggie he had received from Muncie on June 16, 1998.

The above-recited evidence provides reasonable assurance that the cocaine remained undisturbed as it passed from Doty to Muncie and then to Detective Knorr. Moreover, the evidence strongly suggests the exact whereabouts of the cocaine from the time it came into Detective Knorr's possession until it was admitted at trial. Doty seeks to have this Court reweigh the evidence, such as Detective Knorr's inability to constantly monitor Muncie and the weight of the cocaine delivered by Muncie,[4] which we will not do. Doty has failed to establish that the State laid an inadequate foundation for the admission of State's Exhibit Two.

## II. Whether the trial court abused its discretion when it excluded testimony on the grounds of hearsay

Doty next contends that the trial court committed reversible error when it disallowed testimony from Iddings regarding statements made by Muncie. Specifically, Doty argues that the excluded testimony was not hearsay, as it was not offered to prove the truth of the matter asserted.

### A. Hearsay

■■ The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse absent an abuse of that discretion. *Maslin v. State,* 718 N.E.2d 1230, 1234 (Ind.Ct.App.1999) *trans. denied.* Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c); *Smith v. State,* 721 N.E.2d 213, 216 (Ind.1999). A statement is not hearsay if it is not used to prove the matter asserted. *Id.* at 216. If challenged evidence is hearsay and does not fall within one of the exceptions to the hearsay rule, then it is inadmissible. *Whited v.*

---

4. Doty makes much of the fact that Muncie testified to requesting and purchasing one-half of a gram of cocaine yet the weight of the cocaine at trial was .26 grams. However, given both the imprecise process of "eyeballing" one half of a gram and our restraint on appeal from reweighing the evidence, we decline Doty's invitation to reassess Muncie's credibility and reweigh the State's evidence. Moreover, any discrepancy between the amount of cocaine purchased from Doty and the amount presented at trial is a factor that does no more than raise the possibility of tampering and, accordingly, fails.

State, 645 N.E.2d 1138, 1139 (Ind.Ct.App. 1995).

### B. Analysis

Doty complains that the trial court improperly refused to let Iddings testify that he heard Doty say, "Jay is the ones [sic] that gots [sic] it" and that he saw Muncie nod his head. (R. 444.) Doty argues that he was only presenting Iddings's testimony to establish that Muncie heard the statement and to show its effect upon Muncie, and, as such the elicited testimony was not hearsay. Doty fails to cite caselaw, nor do we find any, which would support this contention. The only reasonable interpretation of the disallowed testimony is that it was proffered to prove the truth of the matter asserted, namely that Muncie obtained the cocaine from Jay Alford, not Doty. Accordingly, the trial court did not abuse its discretion in excluding Iddings's testimony.[5]

### III. Whether there was sufficient evidence to determine beyond a reasonable doubt that Doty dealt cocaine within 1,000 feet of school property

### A. Standard of Review—Sufficiency of the Evidence

Our standard of review for challenging the sufficiency of evidence claims is firmly established. This Court does not reweigh the evidence or judge the credibility of witnesses, rather we look to the evidence most favorable to the verdict and to all reasonable inferences to be drawn therefrom. Toney v. State, 715 N.E.2d 367, 368 (Ind.1999). We will affirm a conviction if the admitted evidence contains adequate probative value from which

the jury could infer guilt beyond a reasonable doubt. Id. at 368–69. It is the function of the fact-finder to resolve conflicts in the testimony and to determine the weight of the evidence and the credibility of the witnesses. Krise v. State, 718 N.E.2d 1136, 1144 (Ind.Ct.App.1999), trans. denied.

### B. Analysis—Dealing in Cocaine Within 1,000 Feet of School Property

In the instant case, Doty argues that "there was inadequate evidence of the distance from the site of the alleged offenses to school property[.]" (Appellant's brief at 10.) We agree.

The State's evidence reveals that the distance from Pixie Playhouse to the edge of Doty's residence is 987 feet. However, the cocaine transaction took place inside Doty's residence. Indiana Code section 35-48-4-1(b)(3)(B)(i) provides, in part, that when a person delivers cocaine "in, on, or within one thousand (1,000) feet of: ... school property" the offense is a class A felony. Therefore, the appropriate points of measurement needed to determine whether Doty's delivery of cocaine to Muncie took place "in, on, or within one thousand (1,000) feet" of school property are: (1) the specific site of the cocaine delivery, and (2) the edge of Pixie Playhouse's property. Moreover, we reject the State's argument that it may be inferred from Indiana caselaw interpreting Indiana Code section 35-48-4-1(b)(3)(B)(i) that the State needed only to establish the distance from Doty's residence, as opposed to the location of the cocaine sale, to the school property.[6]

---

5. Moreover, we summarily reject Doty's additional contentions that the proffered testimony was not hearsay because it was being offered for impeachment purposes, was made by a party opponent, or that it was excepted from the hearsay rule because it was a present sense impression. None of these arguments were presented to the trial court and as such were not preserved for appeal. Doty is limited to the specific grounds argued at the

trial court and cannot assert new bases for admissibility for the first time on appeal. See Taylor v. State, 710 N.E.2d 921, 923 (Ind. 1999).

6. Specifically, we reject the State's reliance on Krise, 718 N.E.2d at 1145 and Dixon v. State, 712 N.E.2d 1086, 1093 (Ind.Ct.App. 1999) for the proposition that the State need only measure to the property site of the drug

There is no evidence in the record that Officer Campbell's measurement of 987 feet contained the site of the cocaine delivery, and as such the State has failed to present sufficient evidence from which the jury could find beyond a reasonable doubt that Doty dealt cocaine within 1,000 feet of Pixie Playhouse. Consequently, we reverse Doty's conviction for Dealing in Cocaine within 1,000 feet of school property as a class A felony, and remand with instructions that the trial court enter judgment on the lesser included offense of Dealing in Cocaine as a class B felony, and sentence him accordingly.

Affirmed in part, reversed in part, and remanded with instructions.

SULLIVAN, J., and VAIDIK, J., concur.

delivery. In *Krise*, the appellant argued that the State's evidence was insufficient to sustain her conviction of possession of a schedule II controlled substance within 1,000 feet of a public park. However, Krise's specific contention was that the surveyor lacked personal knowledge of the distance between Krise's home and the park, not that the surveyor failed to measure from the site of her possession of the controlled substance. Moreover, Krise's home, as measured with a plat map, was 870 feet from the park and accordingly did not present the same concerns as the case before us. Similarly, in *Dixon*, 712 N.E.2d at 1093, we simply held that a surveyor's testimony that a middle school was located approximately 650 feet from appellant's residence (the site of the drug transaction), based on his measurements from a tax map, was sufficient evidence to support the dealing in cocaine conviction because there, the State presented evidence that the drug transaction took place within 1,000 feet of school property. Accordingly, we find the State's reliance on *Krise* and *Dixon* misplaced.