**Jewell K. KRISE, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 16S05–0002–CR–118.

Supreme Court of Indiana.

May 9, 2001.

John H. Watson, Mark E. Jones, Batesville, IN, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**ON PETITION TO TRANSFER**

SULLIVAN, Justice.

Defendant Jewell K. Krise and Charles Tungate lived in the same house. Tungate consented to a general search of the house, which ultimately led to the discovery and search of Krise's purse. We agree with Krise that the warrantless search of her purse without her consent violated her Fourth Amendment rights against unreasonable search and seizure.

*Background*

On May 5, 1997, Officer Howard Ayers and Deputy Sheriff Michael Woodhull arrived at the home of Defendant Jewell Krise and Charles Tungate to serve a civil

writ of body attachment on Krise.[1] Krise allowed the officers to enter her house to discuss the validity of the writ.

While inside the home, Officer Ayers noticed a pipe resting on the base of lamp in the living room. After examining it, he detected the scent of burnt marijuana. Officer Ayers questioned Krise about the pipe, but she said that she did not know anything about it. Deputy Darin Lucas then transported Krise to the Decatur County jail whereupon the officers learned that the writ was stale.

Officer Ayers questioned Tungate about the pipe. Tungate ordered the officers out of his house, but the officers did not respond to his request. Instead, Officer Ayers asked Tungate several times if they could search the home for drugs.[2] Tungate told the officers to obtain a warrant to search the home. Tungate nevertheless eventually agreed to the search of the home. Although Tungate refused to give a written consent, Officer Robert Ewing recorded on audiotape Tungate's verbal consent to search. No search warrant had been issued.

Officer Rick Underhill arrived at the scene to assist in searching the home. While searching the bathroom, Officer Underhill noticed a purse lying on top of the commode. Without the consent of either Tungate or Krise, Officer Underhill opened the purse and found a small leather pouch. Inside the pouch, he discovered a small wooden case holding marijuana and a plastic bag containing white powder, later identified as methamphetamine. Officer Underhill also found Krise's driver's license inside the purse. Krise never consented to the search of her purse.

The State charged Krise with Possession of a Schedule II Controlled Substance within 1,000 Feet of a Public Park, a Class C felony.[3] Krise filed a motion to suppress all evidence obtained during the search of her home. The trial court denied the motion on January 14, 1998. A jury convicted Krise as charged on June 2, 1998. The trial court sentenced Krise to

---

1. Officer Ayers and Deputy Sheriff Woodhall, employed by the Decatur County Sheriff's Department, served the stale writ of body attachment issued from the Shelby County Sheriff's Department. Although the record is unclear as to the nature of the writ, it does indicate that Krise had been initially served with the writ on March 3, 1997, and served approximately eighteen days in Shelby County jail.

2. Defense Counsel elicited the following information from Tungate:

Q: At some point in time while you were there, did any of the officers talk to you about consent, about searching your house?
A: Yes they did.
. . .
Q: And what was your response to [Officer Ayers]?
A: I told him no, get out of my house, very plain.
Q: Did he ask you more than one time?
A: Yeah probably ten or twelve times in the course of this time. I mean he just continuously asked.

Q: Until the last time, what was your response?
A: Pretty much I don't want you nosing through my stuff period. I didn't want them here and they knew it. They were aware of it. I just got to the point where I was tired of hearing it. It was obvious they wasn't [sic] leaving. And I said do whatever you gotta do.
. . .
Q: And how long did this conversation go on back and forth if you can remember?
A: It was a half hour, forty-five minutes, somewhere in there...
Q: Now before you finally said yeah go ahead ... what were the officers doing?
A: Well pretty much just scattered into the living room and kitchen. They was [sic] looking through whatever they wanted to anyway.
(R. at 251–53.)

3. Ind.Code §§ 35–48–2–6(d)(2) (1993) and 35–48–4–7(a)(2)(B) (Supp.1995).

the presumptive sentence of four years incarceration, with two years suspended to probation.

Krise appealed her conviction and the denial of her motion to suppress all evidence. The Court of Appeals affirmed the trial court's judgment, finding that a third-party's consent to a warrantless search of a home includes permission to search all containers, and in particular, a purse located inside the home. *See Krise v. State,* 718 N.E.2d 1136, 1142 (Ind.Ct.App.1999). Judge Friedlander pointed out in dissent that this decision conflicts with another recent decision of the Court of Appeals. *Id.* at 1145 (Friedlander, J. dissenting) (citing *State v. Friedel,* 714 N.E.2d 1231 (Ind. Ct.App.1999), *transfer not sought*).

### Discussion

Krise contends that the trial court erred when it denied her motion to suppress because the warrantless search of her home, which led to the warrantless search of her purse, violated her Fourth Amendment[4] rights. The State argues, and the Court of Appeals agreed, that no Fourth Amendment violation occurred since the police officers obtained a voluntary consent from Tungate whom the police officers reasonably believed had authority over the premises. It is important to emphasize that the State argues that the validity of the search came from Tungate's authority to consent to the search of the home, not probable cause. We also point out that the record contains no court explanation on the denial of the motion to suppress.

 The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth Amendment. U.S. Const. amend. IV; *Mapp v. Ohio,* 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Warrantless searches and seizures inside the home are presumptively unreasonable. *See Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *See Berry v. State,* 704 N.E.2d 462, 465 (Ind.1998) (citing *Brown v. State,* 691 N.E.2d 438, 443 (Ind.1998)). One well-recognized exception to the warrant requirement is a voluntary and knowing consent to search. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Stallings v. State,* 508 N.E.2d 550, 552 (Ind.1987).

The twists and turns of Fourth Amendment law are often difficult to negotiate, with variations in fact patterns often determinative of the outcome of cases involving warrantless searches. Here we perceive four variables in the facts that require particular attention. First, as already noted, the warrantless search was made pursuant to consent (rather than probable cause as in many reported cases). Second, the search was of a home (rather than a vehicle). Third, the search was of a purse. And fourth, the person consenting to the search was not the owner of the purse.

The United States Supreme Court has not passed on the constitutionality of a warrantless search involving this precise array of variables, but it has decided cases involving some of them. We begin our analysis with a review of those cases. Af-

---

4. The Fourth Amendment to the United States Constitution provides as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

ter extracting what guidance we can from them, we apply their teaching to the fact pattern we face here.

## I

## A

Our analysis begins by examining the recent United States Supreme Court decision, *Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), in which the Court upheld a warrantless search of a passenger's purse based on probable cause to search an entire automobile. We initially point out that while both *Houghton* and this case involve a warrantless search of a purse, the searches were justified under different exceptions to the warrant requirement: the search in *Houghton* was validated by probable cause; the search in this case was justified by consent. As such, an examination of the two exceptions is necessary to determine *Houghton's* applicability. We begin with the scope of probable cause and consent searches.

In *Houghton*, an officer stopped a vehicle for speeding and driving with a faulty brake light. 526 U.S. at 297, 119 S.Ct. 1297. During the stop, the officer noticed a syringe in the driver's shirt pocket. *Id.* at 298, 119 S.Ct. 1297. When questioned about the syringe, the driver admitted that he used it to take illegal drugs. *Id.* The officer ordered the driver and two female passengers out of the car and then conducted a probable cause search of the car for contraband. *Id.* During the search, the officer found a purse on the back seat, searched it, and discovered drug paraphernalia and methamphetamine. *Id.* Passenger Houghton admitted the purse belonged to her. *Id.* In upholding the search of the passenger's purse, the United States Supreme Court found, "When there is probable cause to search for contraband in a car, it is reasonable for police

officers ... to examine packages and containers without showing of individualized probable cause for each one." *Id.* at 302, 119 S.Ct. 1297. The Court refused to distinguish between a passenger's belongings and the driver's belongings even though the officer's suspicion of the *driver's* criminal conduct was the basis of the search. *Id.* at 302–06, 119 S.Ct. 1297. The Court reasoned in part that its decision not to distinguish between containers during a probable cause search of a vehicle was based upon the scope of warrantless search principles articulated in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). *Id.* at 302, 119 S.Ct. 1297.

*Ross* had held that where probable cause justified the search of a lawfully stopped vehicle, it justified the search of every part of the vehicle and its contents that may conceal the object of the search. 456 U.S. at 825, 102 S.Ct. 2157. *Ross* determined that "[t]he scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause." *Id.* at 823, 102 S.Ct. 2157. Thus, the Court concluded that the scope of a warrantless search of an automobile is not defined by the nature of the container, but rather is defined by the object of the search and the places in which there is probable cause to believe that it may be found. *Id.* at 824, 102 S.Ct. 2157. For example, probable cause to search for undocumented illegal aliens would not justify opening a suitcase. *Id.*

Because this case involves a search of a purse within a home rather than a vehicle, it is important to acknowledge that although both *Houghton* and *Ross* involved vehicle searches, they purported to address searches supported by a warrant of *fixed premises* in general and closed con-

tainers discovered therein. The Court in *Ross* stated:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapons might be found. A warrant to open a footlocker to search for marijuana would also authorize the opening of packages found inside.... When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.
>
> This rule applies to all containers, as indeed we believe it must.

*Id.* at 822–23, 102 S.Ct. 2157 (emphasis added) (footnotes omitted).[5] *See also Houghton,* 526 U.S. at 302, 119 S.Ct. 1297 (describing a search warrant of a premises owned by a person not suspected of a crime: " 'The critical element in a reasonable search is not that the owner of the property is suspected of a crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought.' ") (quoting *Zurcher v. Stanford Daily,* 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)).

From this, we discern that the lawful scope of a search of a vehicle based on probable cause and the lawful scope of a search of a home based on a warrant are identical. Both are defined by the object of the search without placing extra limitations on the opening of containers. *Cf. United States v. Melgar,* 227 F.3d 1038, 1042 (7th Cir.2000) ("*Houghton* indicates that the container rule rests on general principles of Fourth Amendment law that do not depend on the special attributes of automobile searches."). *But see Houghton,* 526 U.S. at 308, 119 S.Ct. 1297 (Breyer, J., concurring) ("[T]he rule applies only to containers found within automobiles. And does not extend to the search of a person found in that automobile.").

### B

Next, we examine the scope of a consent search. The United States Supreme Court in *Florida v. Jimeno,* 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), set forth the test for measuring the scope of a consent search. In that case, an officer lawfully stopped a vehicle. *Id.* at 249, 111 S.Ct. 1801. The officer asked the driver, not the two passengers, for permission to search the car. *Id.* The driver gave his consent to the general search of the car, but did not limit the search. *Id.* The officer discovered a paper bag lying on the floorboard, searched it and found cocaine. *Id.* at 250, 111 S.Ct. 1801. In upholding the search, the Supreme Court reasoned that the officer could have reasonably believed that the driver's general consent to search his vehicle included the search of a paper bag discovered on the floor of the vehicle. *Id.* at 251, 111 S.Ct. 1801. The Court held that the scope of such searches

---

5. *See also Colorado v. Bertine,* 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (applying this *Ross* passage by analogy in upholding an inventory search of a defendant's van which led to the search of his backpack containing drug paraphernalia and cocaine).

are determined by what a "typical reasonable person would have understood by the exchange between the officer and the suspect." *Id.* The Court further cited *Ross* in determining that the scope of a consent search is generally defined by its express object. *Id.*

C

Taken together, *Houghton, Ross,* and *Jimeno* appear to indicate that the scope of a probable cause search of a vehicle, the scope of a warrant search of a home, and the scope of a consent search are all generally defined by the object of the search.

■ However, unlike a probable cause (or warrant) search, the scope of a consent search is measured by objective reasonableness. *Jimeno,* 500 U.S. at 251, 111 S.Ct. 1801. Indeed, *Jimeno* held that while it may be reasonable to conclude that a suspect's consent to the search of his automobile included authorization to search a paper bag on the floor, it would be unreasonable to conclude that the suspect's consent authorized the "breaking open of a locked briefcase within the trunk. . . ." *Id.* at 252, 111 S.Ct. 1801. Further, unlike a probable cause (or warrant) search, a consent search allows for a suspect to limit or restrict the search as he or she chooses. *Id. See also Walter v. United States,* 447 U.S. 649, 657, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980) (ruling that consent searches are limited by the terms of authorization).

■ These principles indicate that the scope of consent is factually sensitive and does not solely depend on the express object to be searched. In contrast, probable cause to search a vehicle and a warrant to search a home authorizes the search of every part of the vehicle or home and closed containers therein that may conceal the object of the search despite the suspect's wishes to place limitations and re-gardless of the officer's belief as to the type of the container to be searched. *Ross,* 456 U.S. at 825, 102 S.Ct. 2157; *California v. Acevedo,* 500 U.S. 565, 572, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

■ In addition, we note two more distinctions between the probable cause exception and the consent exception to the warrant requirement. First, a search validated by consent carries with it additional legal requirements that are not imposed for a search justified by probable cause. For instance, a permissible consensual search requires a voluntary consent, *see Schneckloth v. Bustamonte,* 412 U.S. 218, 223, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and in third-party consent cases, the individual's authority (actual or apparent) to consent to the search of a non-consenting party's property must be established, *see United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). A search justified by probable cause, with or without a warrant, does not implicate any of these factors and therefore is less restricted.

■ Second, the policies that justify probable cause searches (and warrant searches) differ from those supporting consent searches. Searches validated by probable cause require a reasonable ground to suspect that a person has committed or is committing a crime or that a place contains specific items connected with a crime. *See Colorado v. Bertine,* 479 U.S. 367, 373, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (" 'The standard of probable cause is peculiarly related to criminal investigations, not routine, non criminal procedures. . . .' ") (quoting *South Dakota v. Opperman,* 428 U.S. 364, 370 n.5, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976)). The policies underlying consent searches

are entirely different. For example, in *Schneckloth*, the Court articulated the policy underlying consent searches: "[T]he community has a real interest in encouraging consent, for the resulting search may yield necessary evidence for the solution and prosecution of crime, evidence that may insure that a wholly innocent person is not wrongly charged with a criminal offense." 412 U.S. at 243, 93 S.Ct. 2041.

In short, a consent search differs from a probable cause search, the degree to which depends largely upon the facts presented to the officer conducting a consent search. Further, a third-party consent search encompasses one additional requirement, the authority to consent, indicating that a probable cause search is less restricted. Accordingly, we find *Houghton* to be inapplicable to this case.[6]

## II

As briefly noted, the present case conflicts with another recent Indiana opinion, *State v. Friedel*, 714 N.E.2d 1231 (Ind.Ct. App.1999), *transfer not sought*. Both cases involve a warrantless search of a purse justified by a third-party's consent to a general search. In *Friedel*, the driver's consent to the search of his vehicle resulted in the search of a passenger's purse containing methamphetamine and marijuana. *Id.* at 1235. The Court of Appeals ruled the search invalid, finding that although the driver consented to the search of his vehicle, he had no actual or apparent authority to consent to the search of the passenger's purse. *Id.* at 1243. The court rejected the State's argument, which relied on *Jimeno*, that the third-party's scope of consent to search the car included the search of the purse. *Id.*

at 1239. Instead, it focused on the driver's *authority* to consent to the search of the passenger's purse, finding that it was unreasonable for the officers to believe that the driver had common authority over the purse because under the facts, it was evident that the purse belonged to the woman passenger, not the driver. *Id.* at 1246. The court also reasoned that "*the issue is not whether the purse was within the scope of the search, but whether the [third-party] had actual or apparent authority to consent to the search.*" *Id.* at 1239 (emphasis added). In its analysis, the court also distinguished the *Houghton* decision on grounds that the search of the purse in *Houghton* was supported by probable cause and not consent. *Id.* at 1238.

The Court of Appeals panel in this case came to an opposite conclusion from the *Friedel* panel. In upholding the search of Krise's purse, the court determined the following:

> [A]lthough the standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness, *Jimeno*, 500 U.S. at 251 [111 S.Ct. 1801], the determination of reasonableness [for scope of consent] pertains to the third person's authority over the premises in question and not any particular container within a common area of such premises. *See Brown*, 691 N.E.2d at 443.

*Krise*, 718 N.E.2d at 1142. The court went on to hold that "it was reasonable for the officers to conclude that Tungate and Krise had mutual use of and joint access to the bathroom, and thus the purse and items therein were under Tungate's and Krise's common authority." *Id.* at 1143 (citing *Brown*, 691 N.E.2d at 443–44). The

6. *But see United States v. Melgar*, 227 F.3d 1038 (7th Cir.2000) (holding *Houghton* authorized a warrantless search of a third-party's purse pursuant to a renter's consent to search a hotel room).

court also found that because Tungate did not place any explicit limitations on the scope of the officer's search and did not restrict the search by excluding personal items belonging to Krise, it was reasonable for the officers to believe that Tungate's consent to the home included the search of Krise's purse. *Id.*

To resolve the conflict between *Krise* and *Friedel,* we examine the applicability of the scope of a consent search to third-party consent cases.[7] As discussed in Part IB, *supra,* the scope of a consent search is measured by objective reasonableness, the express object to be searched, and the suspect's imposed limitations. Thus, the scope of a consent search is factually sensitive and does not solely depend on the express object to be searched. If we were to apply the scope of consent rules as outlined in *Jimeno* to the facts in this case, arguably one could conclude, as the Court of Appeals did here, that Tungate's consent to search the jointly-occupied home included the search of Krise's purse simply because Tungate did not limit or restrict the search in any way. *Accord Heald v. State,* 492 N.E.2d 671, 680 (Ind.1986) (noting that a defendant's consent to the search of a handbag operated as a consent to search items found within the handbag),

*reh'g denied.* In addition, Tungate gave the officer permission to search the house for drugs. Since Krise's purse is a container where contraband could be found, then the scope of the search would have been proper.

On the other hand, the objective reasonableness standard allows for the extent of the suspect's consent to vary depending on the circumstances. Indeed, the Supreme Court in *Jimeno* found it unreasonable for an officer to believe the consent to search a trunk would authorize a search of a locked briefcase inside the trunk. *See Jimeno,* 500 U.S. at 251–52, 111 S.Ct. 1801. A locked briefcase is comparable to a purse in that both are closed containers that often hold personal items. Arguably then, it would have been *unreasonable* for the officer to believe that Tungate's consent to the general search of the home included the search of a purse that clearly did not belong to him. Under this approach, application of the scope of consent rules could have resulted in an unlawful search of Krise's purse.

We find it significant that *Jimeno* did not contemplate a third-party's authority to consent to a general search, but rather based the scope of consent analysis on a *suspect's* own consent to a general search.

---

7. Federal and other state courts are also in conflict on this point. *Compare United States v. Welch,* 4 F.3d 761, 764 (9th Cir.1993) (holding that a driver's authority to consent to search of a rental car did not extend to the search of the passenger's purse); *United States v. Rodriguez,* 888 F.2d 519, 523–25 (7th Cir.1989) (requiring separate third-party authority for a general search of a room and a defendant's briefcase located inside the room); *United States v. Block,* 590 F.2d 535, 541 (4th Cir.1978) (holding that although a mother had authority to consent to a search of general areas of the home, this authority did not extend to the interior of the son's footlocker); *United States v. Poulack,* 82 F.Supp.2d 1024, 1032–37 (D.Neb.1999) (holding that a passenger's authority to consent to the search of a rented vehicle did not include the authority to consent to the driver's wrapped and sealed boxes); *People v. James,* 163 Ill.2d 302, 206 Ill.Dec. 190, 645 N.E.2d 195, 203 (1994) (ruling that a driver's consent to search a vehicle did not include consent to search the passenger's purse); *with United States v. Sealey,* 830 F.2d 1028, 1031 (9th Cir.1987) (holding that third-party's consent to search was valid where wife consented to search of the garage and officers searched in unmarked sealed containers located inside); *People v. Jenkins,* 22 Cal.4th 900, 95 Cal. Rptr.2d 377, 997 P.2d 1044, 1094 (2000) (ruling that there was an expectation of privacy in suitcase, but a third-party's consent to search it was nevertheless valid), *cert. denied,* —— U.S. ——, 121 S.Ct. 1104, 148 L.Ed.2d 975 (2001).

More specifically, in *Jimeno*, a driver and two passengers occupied the vehicle. *Id.* at 249–50, 111 S.Ct. 1801. The officer obtained only the driver's consent to search the car, and then discovered a folded brown paper bag holding incriminating evidence on the *passenger-side* floorboard. *Id.* The Court did not engage in a discussion regarding ownership of the paper bag, and left open the question of whether the search would have been appropriate under third-party consent principles.

▮ We conclude that the issue is not only whether the purse was within the scope of the consent search, but also whether the third party had actual or apparent authority to consent to the search of the purse. *See Friedel,* 714 N.E.2d at 1239. Thus, the essential factors in this case are whether Tungate had the authority to consent to the search of the home, whether he had authority to permit the search of personal items belonging to Krise, and whether he consented to the search of Krise's purse. As such, we must determine whether Tungate possessed the requisite authority to consent to the search.

### III

▮ It is well established that a third party may consent to the search of the premises or property of another if actual authority exists. Establishing actual authority requires a showing that there is a sufficient relationship to or "mutual use of the property by persons generally having joint access or control for most purposes." *Matlock,* 415 U.S. at 171 & n. 7, 94 S.Ct. 988. *See also Caldwell v. State,* 583 N.E.2d 122, 125 (Ind.1991). If actual authority cannot be shown, then facts demonstrating that the consenting party had apparent authority to consent could prove a lawful search. *See Rodriguez,* 497 U.S. at 188–89, 110 S.Ct. 2793. Under the ap-

parent authority doctrine, a search is lawful if the facts available to the officer at the time would " 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises." *Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). *See also Logan v. State,* 729 N.E.2d 125, 130 (Ind.2000); *Canaan v. State,* 683 N.E.2d 227, 231–32 (Ind.1997), *cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998). The State bears the burden of proving that the third party possessed the authority to consent. *See Rodriguez,* 497 U.S. at 181, 110 S.Ct. 2793.

### A

▮ In considering Tungate's actual authority to consent to the search of the *home,* it is an undisputed fact that Tungate owned and shared the home with Krise, thus the two had joint access to and mutual use of the home. As such, Krise assumed the risk that Tungate would permit a search of common areas in the home. *See Matlock,* 415 U.S. at 170, 94 S.Ct. 988. Tungate had actual authority to consent to the search of the home.

### B

The central question becomes whether the sharing of a home (in particular, the bathroom) means that common authority exists to consent to search containers belonging to only one occupant. Put another way, did Krise assume the risk that by living in the same house as Tungate, he would permit outsiders to inspect not only the common areas of the home but also her personal effects? At least two Supreme Court Justices indicate there is no assumption of risk under these circumstances. As Justice O'Connor explained:

> A privacy interest in a home itself need not be coextensive with a privacy interest in the contents or movements of

everything situated inside the home. This has been recognized before in connection with third-party consent to searches. A homeowner's consent to a search of the home may not be effective consent to a search of a closed object inside the home. Consent to search a container or a place is effective only when given by one with 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.' *United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (O'Connor, J., concurring) (quoting *Matlock,* 415 U.S. at 171, 94 S.Ct. 988). *See also United States v. Rodriguez,* 888 F.2d 519, 523–25 (7th Cir.1989) (requiring separate third-party consent to a general search of a room and consent to search a briefcase located inside the room); *United States v. Block,* 590 F.2d 535, 541 (4th Cir.1978) (holding that although the mother had authority to consent to search general areas of the home, this authority did not extend to the interior of her son's footlocker). *But see United States v. Melgar,* 227 F.3d 1038, 1041 (7th Cir.2000) (upholding a search of a defendant's purse where the search resulted from a third-party's consent to the search of a rented motel room; "Generally, consent to search a space includes consent to search containers within that space where a reasonable officer would construe the consent to extend to the container.").

This Court has addressed cases involving third-party consent searches of a shared home and its contents.[8] However, none of these cases dealt with a third-party's authority to consent to search something like a *purse,* i.e., a closed container that normally holds highly personal items, located within the home.[9] As stated

---

**8.** *See Trowbridge v. State,* 717 N.E.2d 138 (Ind.1999) (ruling that a third-party consent to search inside a tackle box was valid where the third-party claimed it was his and the box was located outside the home), *reh'g denied; Perry v. State,* 638 N.E.2d 1236 (Ind.1994) (holding that the defendant's girlfriend's consent to search a home was valid where girlfriend told police she and defendant shared the home and the defendant himself led police to bags of cocaine and a scale which he used to weigh marijuana); *Wright v. State,* 593 N.E.2d 1192 (Ind.) (ruling that a roommate's consent allowed the officers to lawfully search common areas of the residence from which the officers could see in plain view a knife sheath in the defendant's room on top of a dresser), *cert. denied,* 506 U.S. 1001, 113 S.Ct. 605, 121 L.Ed.2d 540 (1992).

**9.** For authority on third-party consent searches, the Court of Appeals in this case relied upon our decision in *Brown v. State,* 691 N.E.2d 438 (Ind.1998). There, the defendant's girlfriend consented to the search of her house which she shared with the defendant. *Id.* at 442. The officers searched the bedroom where they discovered a knife, gloves, and a ring on top of the dresser and cosmetic table. *Id.* In finding that the dresser and cosmetic table were under the com- mon authority of both the defendant and his girlfriend, this Court held that the police could reasonably believe that the girlfriend had common authority to consent to the search. *Id.* at 443–44. The Court of Appeals focused on our language, "[t]he issue [was] not whether the girlfriend had common authority over defendant's personal effects, but rather whether the girlfriend had common authority over the home, and specifically over the bedroom." *Id.* at 443. While we do recognize that this statement could have been a source of confusion, we clarify that the personal effects we were speaking of included the dresser and cosmetic table upon which the incriminating evidence was found in *plain view.* Such a situation is entirely different from the instant case which contemplates a third-party's consent to search a home which led to a warrantless search of a purse—a *container*—in an effort to find incriminating evidence. Thus, the Court of Appeals's application of *Brown v. State* was misplaced.

The court also cited our decision in *Bruce v. State,* 268 Ind. 180, 375 N.E.2d 1042, *cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978). In that case, we did hold that where the defendant and his wife shared a bedroom, the wife "generally had joint ac-

in Part II, *supra*, the Court of Appeals in *State v. Friedel* ruled invalid a warrantless search justified by a third-party's authority to consent to the search of a purse. 714 N.E.2d at 1240. The court found unreasonable the officer's belief that the driver's general consent to the search of his car meant that he had authority to consent to the search of a purse, which by its nature, is not shared by two or more people. *Id.* at 1240–41. We agree with this analysis of third-party authority principles.

■■■ Rather than considering a third-party's authority to consent to the general search of the home as "all encompassing" to the search of every container found inside the home, we hold that the inspection of closed containers that normally hold highly personal items requires the consent of the owner or a third party who has authority—actual or apparent—to give consent to the search of the container itself.

■■■ In reaching this conclusion, we find that the type of container is of great importance in reviewing third-party consent search cases. Absent one of the well-delineated exceptions to the warrant requirement, "[a] container which can support a reasonable expectation of privacy may not be searched, even on probable cause, without a warrant." [10] *United States v. Jacobsen*, 466 U.S. 109, 120 n.17, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (citing *Ross*, 456 U.S. at 809–12, 102 S.Ct. 2157); *see also Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990) (per curiam); *Horton v. California*, 496 U.S. 128, 141 n.11, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *Ex parte Jackson*, 96 U.S. 727, 733, 24 L.Ed. 877 (1877); *Robles v. State*, 510 N.E.2d 660, 664 (Ind.1987), *reh'g denied*. An expectation of privacy gives rise to Fourth Amendment protection where the defendant had an actual or subjective expectation of privacy and the claimed expectation is one which society recognizes as reasonable. *See Bond v. United States*, 529 U.S. 334, 338, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000); *see also State v. Foreman*, 662 N.E.2d 929, 933 (Ind.1996) (citing *Blalock v. State*, 483 N.E.2d 439, 441 (Ind.1985)) (citing in turn *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), and *Katz v. United States*, 389. U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)), *reh'g denied*.

---

cess" to all areas within her own bedroom, including the defendant's jewelry box. *Bruce*, 268 Ind. at 236, 375 N.E.2d at 1072. But as Judge Friedlander recognized in his dissent in this case, "there was ample evidence [in *Bruce*] that the wife had joint access" to the jewelry box found in the shared bedroom, and therefore, it was "reasonable to conclude that [the defendant] assumed the risk that his wife would permit a search." *Krise*, 718 N.E.2d at 1147.

10. A different rule applies with respect to containers found in vehicles where police have probable cause to search the container itself but lack probable cause to search the entire vehicle, *see California v. Acevedo*, 500 U.S. 565, 579–80, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), or where police have probable cause to search the entire vehicle and "its contents that may conceal the object of the search," *see Ross* 456 U.S. at 824–25, 102 S.Ct. 2157. "[C]losed containers in cars [may] be searched without a warrant because of their presence within the automobile" despite the protection of privacy interest in containers. *Acevedo*, 500 U.S. at 572, 111 S.Ct. 1982. But *Acevedo* and *Ross* apply only to vehicles. *See id.* at 579–80, 111 S.Ct. 1982; *see also United States v. Donnes*, 947 F.2d 1430, 1435 n.7 (10th Cir.1991) ("*Acevedo* was expressly based on an application of the automobile exception, and it does not alter the principle that a container discovered inside the home is protected by the warrant requirement of the fourth amendment.").

■ The first part of the analysis requires a determination that Krise held an actual, subjective expectation of privacy in the area and personal item searched. In making this determination, we look at the steps that Krise took to preserve her privacy. *See Bond*, 529 U.S. at 338, 120 S.Ct. 1462; *Foreman*, 662 N.E.2d at 933. Here, the purse was located in the bathroom, a common area of the home where Tungate could gain access to it. It was not located in a closet or inside a dresser drawer where Krise could have expected more privacy. But the bathroom is one of the more private areas of a home. Beyond that, the purse was located inside her home and thus was not accessible to the general public. We do not believe that Krise's expectation of privacy in her home and bathroom in general, and her purse in particular, was diminished simply because it was readily accessible to one joint occupant, Tungate. *Accord Foreman*, 662 N.E.2d at 934 ("The fact that other employees or entrusted people have a key to one's office does not defeat that person's expectation of privacy in his or her commercial premises."); *cf. Trowbridge*, 717 N.E.2d at 144 (discussing privacy interest in a tackle box located outside, on the patio, in a common area of a home).

For the second part of the analysis, we must determine whether Krise's expectation of privacy under these circumstances is one which society is prepared to accept as objectively reasonable. *See Bond*, 529 U.S. at 338, 120 S.Ct. 1462; *Foreman*, 662 N.E.2d at 934. In the probable cause (not consent as here) case, *Wyoming v. Houghton*, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999), three United States Supreme Court justices agreed that a search of a purse involves a serious intrusion on privacy that is tantamount to the intrusion of a search of one's person. *Id.* at 310, 119 S.Ct. 1297 (Stevens, J., dissenting). And Justice Breyer in his concur-

ring opinion acknowledged, "Purses are special containers. They are repositories of especially personal items that people generally like to keep with them at all times...." *Id.* at 308, 119 S.Ct. 1297 (Breyer, J., concurring). Most recently, the Supreme Court recognized Fourth Amendment privacy interest in an opaque carry-on luggage located in a bus above the seat of its owner. *See Bond*, 529 U.S. at 338–39, 120 S.Ct. 1462.

■ Both state and federal courts have found that the nature of a container is significant in determining whether a third-party possessed the requisite authority to consent to its search. *See United States v. Basinski*, 226 F.3d 829, 834 (7th Cir.2000) (locked briefcase); *United States v. Rodriguez*, 888 F.2d 519, 524 (7th Cir.1989) (marked briefcase and file box); *Welch*, 4 F.3d at 764 (passenger's purse); *United States v. Salinas–Cano*, 959 F.2d 861, 865 (10th Cir.1992) (closed but unlocked suitcase); *Block*, 590 F.2d at 541 (the interior of footlocker); *Owens v. State*, 322 Md. 616, 589 A.2d 59, 66–67 (visitor's luggage), *cert. denied*, 502 U.S. 973, 112 S.Ct. 452, 116 L.Ed.2d 470 (1991). *But see Melgar*, 227 F.3d at 1042 (unmarked purse); *United States v. Sealey*, 830 F.2d 1028, 1031 (9th Cir.1987) (unmarked sealed containers inside garage); *People v. Jenkins*, 22 Cal.4th 900, 95 Cal.Rptr.2d 377, 997 P.2d 1044, 1094 (2000) (expectation of privacy in suitcase but third-party consent to search was nevertheless valid), *cert. denied*, —— U.S. ——, 121 S.Ct. 1104, 148 L.Ed.2d 975 (2001). Accordingly, we believe that society accepts as objectively reasonable that persons have a legitimate expectation of privacy in their purses and other closed containers that normally hold highly personal items.

■ We do acknowledge that in cases involving the scope of *automobile searches*

justified by *probable cause,* the United States Supreme Court has warned against constitutionally distinguishing between "worthy" and "unworthy" containers. *See Houghton,* 526 U.S. at 302, 119 S.Ct. 1297; *Ross,* 456 U.S. at 822, 102 S.Ct. 2157 (citing *Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981) (plurality opinion)). However, *Ross* further explained, "[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view ... [and] the protection afforded by the Amendment varies in different settings." 456 U.S. at 822–23, 102 S.Ct. 2157 (citation omitted). Moreover, *Houghton* recognized that individuals have a "reduced expectation of privacy with regard to the property that they transport in cars" traveling on public highways where the property is subject to police examination and is "exposed to traffic accidents that may render all their contents open to public scrutiny." 526 U.S. at 303, 119 S.Ct. 1297; *see also Acevedo,* 500 U.S. at 578, 111 S.Ct. 1982 ("[T]his Court has explained that automobile searches differ from other searches."). The Supreme Court has suggested that individuals have a higher expectation of privacy in containers and their contents which are located inside the sanctity of their own home— where privacy interests are paramount— than in their vehicles where privacy interests are diminished. Thus, Fourth Amendment protection of personal effects including containers depends upon where the effects are located (an automobile versus a dwelling), *see id.* at 580, 111 S.Ct. 1982; the officer's justification supporting the search (probable cause versus consent), *Ross,* 456 U.S. at 822–23, 102 S.Ct. 2157; and the type of inspection (physical versus visual), *see Bond,* 529 U.S. at 338–39, 120 S.Ct. 1462.

C

In applying these principles to this case, a valid warrantless search of Krise's purse required a showing of Tungate's mutual use of and joint access to the premises as well as the purse. Tungate gave a voluntary consent to the general search of the home which he shared with Krise and had authority to do so. However, the State has not proven that Tungate had mutual use of or joint access to Krise's purse, and in fact, Tungate testified that he did not have access to her purse. Nor has the State shown that Krise gave Tungate permission to have access to her purse in any way. Krise had a legitimate expectation of privacy in her home and her purse and its contents. Because Tungate clearly lacked any privacy interests in Krise's purse, *cf. Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) (holding that the defendant did not have a legitimate expectation of privacy in his companion's purse, and therefore, he lacked standing to challenge the search of the purse), we conclude that Tungate had no actual authority to consent to the search of Krise's purse. We also find that the State failed to justify the search on the basis of apparent authority. At the time Officer Underhill decided to search Krise's purse, he knew that the handbag was a woman's purse and that Krise was the only woman living in the house. Another officer testified that there was no doubt in his mind that the handbag seized was a woman's purse. There is no evidence showing that Tungate told police that he shared the purse, or had joint access to the purse in any way. The mere fact that the purse was located in the common area of the house did not render reasonable a belief that Tungate had the requisite authority to consent to the search of Krise's purse.[11]

---

11. In finding that Tungate had no authority to consent to the search of Krise's purse, we do

*Conclusion*

Having previously granted transfer, vacating the opinion of the Court of Appeals pursuant to Indiana Appellate Rule 11(B)(3), we now reverse the judgment of the trial court and remand for proceedings consistent with this opinion. In reversing the trial court's judgment denying Krise's motion to suppress, we need not and do not consider her remaining arguments.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

not decide whether his consent was voluntary though we express considerable doubt that it was so.