**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LEANNA WEISSMANN**
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WARREN D. BOWEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 16A05-1309-CR-456 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DECATUR CIRCUIT COURT
The Honorable Timothy B. Day, Judge
Cause No. 16C01-1302-FB-132

**April 29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHEPARD, Senior Judge**

## STATEMENT OF THE CASE

Warren D. Bowen's mother was concerned for his well-being because she thought he was making methamphetamine. She brought the police to Bowen's house, which she owned. After discovering contraband, officers obtained a search warrant and later charged Bowen with meth-related offenses. In this discretionary interlocutory appeal, he seeks review of the denial of his motion to suppress evidence. We affirm.

## FACTS AND PROCEDURAL HISTORY

In November 2011, Lyda Walterman purchased a house with a detached garage for the use of her son Bowen and his wife. Walterman was the only person named on the deed and the utility bills. She did not live at the house, but she had a key. She was free to come and go even when Bowen was not present, such as to let Bowen's dog go outside. Walterman intended to sell the house to Bowen and his wife two years from the date of purchase, and in the meantime they agreed to make payments on the mortgage for Walterman's residence. Bowen kept the detached garage locked and had the only key.

Over time, Bowen became more withdrawn and stopped visiting his mother. He lost weight and appeared to have stopped taking care of himself. Walterman learned that the police had responded to several emergency calls from Bowen's home. She saw "a lot of different people" coming and going from the house. Tr. p. 13. Once, she saw people in the garage when Bowen was not present. When she introduced herself, they left quickly.

Walterman talked to several people, including Bowen's wife, who "confirm[ed] her suspicions" that Bowen was manufacturing meth. *Id.* at 9, 14. In addition, though

2

Bowen had made payments on Walterman's mortgage early on, his payments had become sporadic. Finally, one day Walterman went over to the house and found Bowen in an incoherent condition.

On February 15, 2013, Walterman called Deputy Eric Kramer, a family friend, to express her concerns. During a subsequent discussion she told him she thought Bowen was making meth and explained what she had seen. She also told Kramer she owned the house. Kramer had previously been dispatched to the house on a 911 call.

On February 21st, Walterman met Kramer and other police officers at her home. She signed a waiver and consent form, agreeing that the officers could search the "residence, detatched [sic] garage, barn and property" where Bowen lived. State's Ex. 1.

Next, she and the officers went to the house. Walterman and Kramer went to the front door while another officer, Chris Howell, walked over to the detached garage. Walterman knocked and went inside. Bowen was sitting at a computer and invited her in. He saw Kramer in the doorway and gestured at him to enter the house. Kramer asked Bowen if meth was being made on the property, and Bowen said it had happened once, six months ago. Kramer asked Bowen if he used meth, and he responded, "Sometimes." Tr. p. 41. Kramer asked if he would "find anything" if he searched the house. *Id.* at 20. Bowen responded in the affirmative and, upon Kramer's request, retrieved drug paraphernalia from the kitchen. Bowen never objected to the officers' presence. To the contrary, Kramer asked Bowen if "it was alright to look around," and his response was, "Whatever." *Id.* at 48.

3

Meanwhile, Officer Howell walked up the driveway toward the garage. As he stood on the driveway, he saw two plastic buckets and a black plastic funnel on the ground outside the garage. One bucket contained "battery strippings" and the other contained an empty one-gallon can of organic solvent. Appellant's App. p. 19. Howell went into the house. He and Kramer shared information. Next, Howell left to obtain a search warrant. After obtaining the warrant, officers searched the property and apparently discovered additional contraband.

The State charged Bowen with dealing and possession of meth. He moved to suppress. The court held an evidentiary hearing and denied his motion. It granted permission to pursue an interlocutory appeal, and our motions panel granted Bowen's request.

ISSUE

Bowen's appeal challenges the trial court's denial of his motion to suppress.

DISCUSSION AND DECISION

We review a trial court's denial of a motion to suppress in a manner similar to review of other sufficiency issues. *Sanders v. State*, 989 N.E.2d 332, 334 (Ind. 2013). There must be substantial evidence of probative value in the record to support the ruling of the trial court. *Id.* We do not reweigh the evidence, and we consider conflicting evidence in the light most favorable to the trial court's ruling. *Id.*

Bowen argues that the officers' warrantless entry onto his property violated his protections against unreasonable search and seizure under the Fourth Amendment and article 1, section 11 of the Indiana Constitution.

4

# I. FOURTH AMENDMENT

The Fourth Amendment generally prohibits a warrantless search unless a valid exception to the warrant requirement exists. *Id.* at 335. If a search is conducted without a warrant, the burden is on the State to prove that, at the time of the search, an exception to the warrant requirement existed. *Black v. State*, 810 N.E.2d 713, 715 (Ind. 2004).

One well-recognized exception to the warrant requirement is a voluntary and knowing consent to search. *Krise v. State*, 746 N.E.2d 957, 961 (Ind. 2001). Where a third party has given consent, the individual's authority to consent to the search of a non-consenting party's property must be established. *Id.* at 964. The State bears the burden of proving the third party's authority. *Id.* at 967. The State may prove actual authority, which requires a showing that there is a sufficient relationship to or mutual use of the property by persons generally having joint access or control for most purposes. *Id.*

Here, Walterman owned the house in her name alone, and her name was on the utilities. She and Bowen had more than a landlord-tenant relationship because she had free access to the property (with the exception of the detached garage, which does not affect our analysis). In addition, Walterman went to the house when no one was present to let Bowen's dog outside and to check on the property. She granted Bowen similar free access to her own home.

While only marginally pertinent to the question of Walterman's legal authority to grant entry, it is plain that her reasons for entering the home with Officer Kramer were altogether legitimate. Her son's change in weight and appearance, the emergency runs to

the house, seeing her son in a drugged condition, and his wife's confirmation that he was making meth all pointed to a need for intervention.

When Kramer met with Walterman, she related much of the above. The evidence is sufficient to establish Walterman's actual authority to consent to the officers' warrantless entry onto the property.

Bowen further argues Howell nonetheless did not have authority to approach the detached garage. The Fourth Amendment does not protect activities or items that, even if within the curtilage of a home, are knowingly exposed to the public. *Dora v. State*, 957 N.E.2d 1049, 1052 (Ind. Ct. App. 2011), *trans. denied*. Police observations while on private property do not violate the Fourth Amendment when the police have a legitimate investigatory purpose for being on the property and limit their entry to places that other visitors would be expected to go, such as walkways or driveways. *Id.* at 1052-53.

Howell was on the property, with Walterman's consent, to investigate the allegation of meth manufacturing. He was on the driveway, where he had a right to be, when he saw items related to meth-making, specifically "battery strippings," a plastic funnel, and an empty one-gallon can of organic solvent. Appellant's App. p. 19. His presence and observations did not violate the Fourth Amendment.

## II. INDIANA BILL OF RIGHTS, SECTION 11

Though the language of article 1, section 11 tracks the language of the Fourth Amendment, we conduct a separate analysis. *Trimble v. State*, 842 N.E.2d 798, 803 (Ind. 2006), *adhered to on reh'g*, 848 N.E.2d 278 (2006). Instead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police

officer, concluding that a search is legitimate where it is reasonable given the totality of the circumstances. *Id.* We consider the following factors in assessing reasonableness: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Id.*

*Degree of suspicion of a violation.* Here, there was a high degree of suspicion that Bowen was manufacturing meth. Walterman told Deputy Kramer about Bowen's conduct and involvement in it. In addition, Kramer had previously been involved in an emergency run to Bowen's house. Finally, Kramer personally knew Walterman and Bowen and could weigh Walterman's credibility.

*Degree of intrusion.* The officers' intrusion was minimal. They had Walterman's permission to enter the property, and Howell remained on the driveway in a location where visitors would be expected to go. Furthermore, when Walterman entered Bowen's home, and Bowen saw Kramer standing in the doorway, he invited Kramer inside and talked with him.

*Extent of law enforcement needs.* Law enforcement needs include proper concern for the health and safety of others. *Id.* at 804. Based on Walterman's information, the police had ample basis to be concerned for Bowen's well-being and to end the grave risk of harm posed by the meth-making process.

Considering these factors, the search was reasonable under the totality of the circumstances and did not violate article 1, section 11.

## CONCLUSION

For the reasons stated above, we affirm the court's denial of Bowen's motion to suppress.

Affirmed.

MAY, J., and BARNES, J., concur.