## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 17 2016, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Johnnie Nettles, | November 17, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 71A05-1603-CR-513 |
| v. | Appeal from the St. Joseph Superior Court |
| State of Indiana, | The Honorable Jerome Frese, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause Nos. 71D03-1412-MR-12 71D03-1207-FB-99 |

**Bailey, Judge.**

# Case Summary

[1] Johnnie Nettles ("Nettles") appeals his convictions for Murder, a felony,[1] and Robbery, as a Level 5 felony.[2] He presents the sole issue of whether the trial court abused its discretion in admitting physical evidence. We affirm.

# Facts and Procedural History

[2] On December 21, 2014, the owners of Chuck's Tavern in South Bend, Indiana entered the premises and found their employee, twenty-five-year-old Angela Garza ("Garza"), murdered. She had suffered eighteen stab wounds and blunt force trauma. Approximately $1,500.00 was missing from the cash register and two safes. Garza's vehicle was also missing.

[3] Nettles soon came under suspicion, as he had been in contact with Garza during the prior evening and had arranged to meet her when she closed the bar. During the afternoon of December 21, Corporal David Ruiz of the Mishawaka Police Department ("Corporal Ruiz") received a dispatch indicating that Nettles could be located at an apartment complex at 4500 Hickory Road in St. Joseph County. By that time, Corporal Ruiz had located Garza's missing vehicle near 4508 Hickory Road.

---

[1] Ind. Code § 35-42-1-1.

[2] I.C. § 35-42-5-1. This appeal is consolidated with an appeal from a probation revocation order in 71D03-1207-FB-000099. However, Nettles presents no separate argument with regard to the probation revocation order.

[4] Corporal Ruiz and several other officers approached the first apartment unit of 4500 Hickory Road. Before the officers "had the chance to knock," a door opened and Nettles exited the apartment to approach a mailbox. (Tr. at 28.) The officers restrained Nettles and requested identification from him. Nettles stated that his identification card could be found inside a black coat hanging in a closet in the front room. He asked to be allowed to wear that coat and also requested his shoes.

[5] Nettles was taken to the police station, where he gave a statement indicating that Garza's keys and cellphone, as well as a knife, could be found in his apartment. Meanwhile, Lieutenant Anthony Bontrager ("Lieutenant Bontrager") interviewed Nettle's girlfriend, Diamond Marshall ("Marshall"), and determined that she had leased the apartment solely in her name. Marshall executed a form giving permission to search the apartment. A search yielded blood-stained currency, Garza's cell phone and keys, a food benefits card that had belonged to Garza's sister, and a broken knife later found to contain DNA consistent with Garza's DNA profile.

[6] Nettles was charged with Murder and Robbery. Prior to trial, he filed a motion to suppress. Nettles sought exclusion of the knife, keys, card, cell phone, and currency. After a hearing, the motion to suppress was denied. Nettles was tried

by a jury and convicted as charged. He received consecutive sentences of sixty-five years for Murder and six years for Robbery.[3] This appeal ensued.

# Discussion and Decision

[7] Nettles contends that the trial court erred in denying his motion to suppress. However, "[d]irect review of the denial of a motion to suppress is only proper when the defendant files an interlocutory appeal." *Clark v. State*, 994 N.E.2d 252, 29 (Ind. 2013). We thus frame the issue as whether the trial court abused its discretion in admitting evidence. A trial court has broad discretion to rule on the admissibility of evidence, and we reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). However, when an appellant argues that the trial court admitted evidence that was obtained in an unconstitutional search or seizure, he or she raises a question of law that we review de novo. *Id.* at 40-41.

[8] Nettles first alleges that the warrantless search was conducted in violation of the Fourth Amendment to the United States Constitution. "The Fourth Amendment protects persons from unreasonable search and seizure and this protection has been extended to the states through the Fourteenth

---

[3] Nettles was on probation after having pled guilty to Burglary as a Class B felony in 2012. On February 22, 2016, his probation was revoked. As a sanction, Nettles was ordered to serve the six-year sentence that had been suspended.

Amendment." *Krise v. State*, 746 N.E.2d 957, 961 (Ind. 2001). Warrantless searches and seizures conducted inside a home are presumptively unreasonable. *Id.* The State has the burden of proving that an exception to the warrant requirement existed at the time of the warrantless residential search. *Id.* One well-recognized exception to the warrant requirement is that of a voluntary and knowing consent to search. *Id.*

[9] Nettles acknowledges that a consent search took place, but argues: "Although Diamond Marshall signed a consent to search form, the circumstances under which it was signed were not voluntary." Appellant's Brief at 21.

[10] At the suppression hearing, Lieutenant Bontrager testified that he had obtained Marshall's consent to search the apartment. According to Lieutenant Bontrager, he read an electronic version of a *Pirtle*[4] form to Marshall. He further testified that Marshall was non-confrontational and appeared to understand the explanation of her *Pirtle* rights. Both Marshall and Lieutenant Bontrager electronically signed the form. At the conclusion of the suppression hearing evidence, the trial court sought to clarify that Nettles "accept[ed] that [Marshall] was not coerced." (Tr. at 145.) Nettles agreed that coercion would not be argued.

---

[4] In *Pirtle v. State*, 263 Ind. 16, 323 N.E.2d 634 (1975), our supreme court held that a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent. The right may be waived, but the burden will be upon the State to show that such waiver was explicit. *Id.* at 29, 323 N.E.2d at 640.

[11] Thereafter, at trial, Nettles lodged a continuing objection "based upon the ruling on the motion to suppress." (Tr. at 332-33.) Several times, upon the admission of testimonial or physical evidence, Nettles reminded the trial court of his continuing objection. However, he did not provide any specificity. For example, he once objected as follows: "Defendant would object to Exhibits 65 through 86 for the reason that they are all depicting items of the search of the apartment." (Tr. at 566.) To the extent that Nettles now claims Marshall's consent was involuntary, he did not take this position at the suppression hearing or at trial.[5] Moreover, while he now highlights the facts that he had been incapacitated by his arrest and Marshall was a single mother with a sick baby, he directs us to no testimony suggesting that any police officer engaged in coercive conduct directed toward Marshall. Nettles has not successfully challenged the voluntariness of Marshall's consent.

[12] Nettles next presents a Fourth Amendment argument related to recovery of the blood-stained currency in particular. He argues that, notwithstanding Marshall's consent, she did not have authority to permit a search of his clothing. According to Nettles, his expectation of privacy was akin to that of the appellant in *Krise*, whose purse was searched without her consent after her roommate gave verbal consent to search the premises. 746 N.E.2d at 960.

---

[5] "If the foundational evidence at trial is not the same as that presented at the suppression hearing, the trial court must make its decision based upon trial evidence and may consider hearing evidence only if it does not conflict with trial evidence." *Guilmette*, 14 N.E.2d at 40, n. 1. The trial court also is to consider any hearing evidence that is favorable to the defendant and not contradicted by trial evidence. *Id.*

[13]   In *Krise*, our Indiana Supreme Court observed that a consent search is more restricted than a search based upon probable cause – in that authority to consent is required – and in an ultimately fact-sensitive situation, "the scope of a consent search is measured by objective reasonableness, the express object to be searched, and the suspect's imposed limitations." *Id.* at 966. The Court noted that "the type of container is of great importance," looked at steps Krise had taken to protect her privacy,[6] and concluded that Krise's roommate had no actual authority to consent to the search of the purse and the State had failed to justify the search on the basis of apparent authority. *Id.* at 969-71. Reversing the denial of Krise's motion to suppress, the Court explained its holding as follows:

> Rather than considering a third-party's authority to consent to the general search of the home as "all encompassing" to the search of every container found inside the home, we hold that the inspection of closed containers that normally hold highly personal items requires the consent of the owner or a third party who has authority – actual or apparent – to give consent to the search of the container itself.

*Id.* at 969. Actual authority to consent to a search of a home may not be effective consent to a search of a closed object inside the home. *Id.* at 968. Thus, Nettles asks that we consider his coat pocket to be a type of "closed

---

[6] Krise's roommate, Charles Tungate, testified that he did not have access to Krise's purse.

container" as discussed in *Krise*, and that we find Marshall lacked actual or apparent authority to consent to its search.

[14] Marshall, the sole lessee of the apartment, advised officers that she and Nettles shared a closet and that Nettles also had a bag of clothing in the living room. The closet was a repository for some items Nettles kept there as he came and went, "staying most nights" with Marshall. (Tr. at 447.) Unlike the clothing in the living room, Nettles did not restrict access to the closeted items by depositing them in a bag. Rather, his clothing was commingled with Marshall's clothing. The officers were not required to remove a covering, much less open a closure mechanism as is common with purses. Under the circumstances here, we are not persuaded that Nettles took steps such that he had an expectation of privacy in his coat pocket akin to that of one who deposits highly personal items in a closed purse. He has shown no Fourth Amendment violation.

[15] Nettles also argues that the trial court admitted physical evidence obtained in violation of Article 1, Section 11 of our Indiana Constitution, providing:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

When determining whether a search comports with this state constitutional provision, "[i]nstead of focusing on the defendant's reasonable expectation of privacy, we focus on the actions of the police officer, concluding that the search

is legitimate where it is reasonable given the totality of the circumstances." *Trimble v. State*, 842 N.E.2d 798, 803 (Ind. 2006). In the evaluation of reasonableness, we consider "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[16] Here, police had a very strong suspicion that Nettles had murdered Garza. He had contacted her repeatedly the night before to arrange a meeting when she closed the bar. That meeting time corresponded to Garza's last cash register transaction and last cell phone communication. Garza's vehicle had been located at the apartment complex where Nettles was known to stay. The consent search did not present an additional intrusion into Nettles' ordinary activities, as the search of Marshall's premises did not take place until after Nettles had been arrested and removed from the premises. Finally, the extent of law enforcement needs was high, as the search involved the recovery of crucial items connecting Nettles to Garza's murder. The keys, cell phone, and food benefits card had been in Garza's possession; the broken knife and some of the currency had DNA consistent with that of Garza. The search was not unreasonable under the totality of the circumstances.

# Conclusion

[17] We find no abuse of discretion in the admission of evidence.

Affirmed.

Riley, J., and Barnes, J., concur.