**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 25 2013, 6:05 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARCE GONZALEZ, JR.**
Dyer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHAWN ANTHONY CRAFT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1211-CR-458 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable J. Philip McGraw, Judge Pro Tem
Cause No. 45G04-1205-FB-57

**June 25, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Shawn Anthony Craft (Craft), appeals his conviction for Count I, burglary, a Class B felony, Ind. Code § 35-43-2-1(B)(i).

We affirm.

## ISSUE

Craft raises one issue on appeal, which we restate as: Whether the trial court abused its discretion in admitting the DNA evidence because the State presented an insufficient chain of custody.

## FACTS AND PROCEDURAL HISTORY

On October 28, 2011, Darren Dudkowski (Dudkowski) left his home on 7602 Missouri Avenue in Hammond, Indiana and went to Michigan for the weekend. He returned to his home on October 31, 2011. When he got home, Dudkowski noticed that the glass on his front and back door was broken. He also found that the chair underneath the broken window had been moved. His house had been ransacked. He discovered that his cash, gold chain, and Seiko watch were missing. Dudkowski called the Hammond Police Department.

When the police arrived, Officer Gregory Adkins (Officer Adkins) processed the scene and found some spots of blood on the inside wall below the window. He took swabs of the blood and placed it in a sealed box and put the box into an envelope which he also sealed. He wrote down the date, time, his I.D number, case number, and the

2

contents of the envelope. He took the evidence down to the police station and placed it in the vault property room, a secure area that the public cannot access. At no point did Officer Adkins leave the evidence unattended.

On January 23, 2012, Detective Nicole Duncanson (Detective Duncanson) obtained the envelope containing the blood swab from the vault property room. She noted that the seal that Officer Adkins had put on one side was still intact and the envelope showed no sign of tampering. Detective Duncanson put additional tape on the envelope and endorsed the envelope with her initials. She transported the evidence to the Indiana State Police Laboratory (State Lab). Not once did Detective Duncanson leave the evidence unattended. When Julie Mauer, a DNA analyst at the State Lab (Analyst Mauer), received the envelope containing the blood swab, she noted that it showed no signs of tampering or damage. She then prepared a DNA profile from the blood swab.

On April 13, 2012, Officer Timothy Walczak obtained a buccal swab sample from Craft. He placed the buccal swab in an envelope, sealed it, and took it directly to the vault property room. On April 18, 2012, Detective Duncanson took out the buccal swab from the vault property room and took it directly to the State Lab for DNA analysis. She noted that the evidence had not been tampered with and at no point did she leave it unattended. Analyst Mauer received the buccal swab in a sealed and unopened envelope. She then created a DNA profile from the buccal swab and compared it to the DNA sample created from the blood swab. They matched. Subsequently, Detective

3

Duncanson interviewed Craft, and asked him if there was any reason why his blood would be inside Dudkowski's house. Craft had no explanation for this.

On May 25, 2012, the State arrested Craft and charged him with Count I, burglary a Class B felony, Ind. Code § 35-43-2-1(B)(i). On July, 8, 2012 the State amended the Information, adding a habitual offender allegation. On July 23 - 24, 2012, a jury trial was held. At the close of the evidence, the jury found Craft guilty as charged. Craft waived his right to a jury trial and admitted to being a habitual offender. On August 28, 2012, the trial court imposed a sentence of 18 years on the burglary charge, and the sentence was enhanced by 17 years for the habitual offender adjudication for a total sentence of 35 years.

Craft now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Craft now contends that the State failed to provide a proper chain of custody for admission of the DNA results. The admission or exclusion of evidence is within the sound discretion of the trial court. *Doty v State*, 730 N.E. 2d 175, 178 (Ind. Ct App. 2000). When considering the proper chain of custody for physical evidence, the State must provide reasonable assurances that an exhibit, which has passed through various hands, has remained undisturbed. *Id.* It is sufficient if the State presents evidence which "strongly suggests" the exact whereabouts of the evidence at all times. *Id.* When dealing with fungible items, the State has an enhanced burden of demonstrating a sufficient chain of custody. *Id.* A defendant who challenges the chain of custody must present evidence

4

which does more than raise a mere possibility that the evidence could have been tampered with. *Id.* Any gaps in the chain of custody go to the weight of the evidence and not to the admissibility of the evidence. *Id.* Moreover, when the evidence is handled by public officers, there is a presumption that they used due care and that the evidence was handled with regularity. *Id.*

Here, the State presented a chain of custody for both Exhibit 32 (the blood swabs taken from inside Dudkwoski's home) and Exhibit 31 (the buccal swabs taken from Craft). Officer Adkins was responsible for collecting Exhibit 32 from the crime scene. He testified at trial that he had employed standard protocols when collecting the blood swabs from Dudkwoski's home. Once he took the blood swabs, he placed the swabs in a sealed envelope and took it directly to the police station and placed it in the property vault. Detective Duncanson further testified that when she took it out from the property vault and delivered it to the State Lab, she noted that it had not been tampered with. Finally, Analyst Mauer testified that when she received the evidence from Detective Duncanson, the envelope showed no sign of tampering.

With regards to Exhibit 31, Officer Walczak testified that after he took the buccal swab from Craft, he placed it in a sealed envelope and took it to the police station's property vault. Detective Duncanson retrieved the evidence from the property vault, she noted that the seal was intact, and she delivered it to the State Lab. When Analyst Mauer took out Exhibit 31 to compare it to Exhibit 32, she found that the seal was still intact and its envelope unopened.

Craft now contends that Exhibit 32 was tampered with. He alleges that the state failed to present a sufficient chain of custody as no evidence was presented at trial explaining why a Lowell Laboratory bar code sticker was on the exhibit. He opines that as no personnel working at Lowell Laboratory testified to this, the evidence should not have been admitted.

We conclude that the State established a sufficient chain of custody for Exhibit 32. Analyst Mauer testified at trial that the bar codes are usually generated by any of the four State police laboratories in Indiana, one of which was the Lowell Laboratory. She explained that once evidence is received at any one of these laboratories, the evidence clerk generates a bar code for the evidence. Analyst Mauer testified that the bar code is then used to scan the evidence and create a computer record in the State Lab.

The lack of any testimony from the personnel at the Lowell lab who processed the evidence does not render the chain of custody insufficient. The State does not need to present testimony from every single individual who handles a given piece of evidence. *Culver v State* 727 N.E 2d 1062,1067 (Ind. 2000). Gaps, such as this go to the weight, not the admissibility of the evidence. *Id.*

Therefore, we find that Craft has presented no evidence that defeats the chain of custody and has failed raising more than a mere possibility of tampering. See *Dotty*, 370 N.E. 2d at 178. Therefore, we conclude that the trial court properly admitted the DNA evidence.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion in admitting the DNA evidence since the State presented a sufficient chain of custody

Affirmed.

BRADFORD, J. and BROWN, J. concur